**POHLIG BUILDERS, LLC**

v.

**ZONING HEARING BOARD OF SCHUYLKILL TOWNSHIP and Schuylkill Township Board of Supervisors.**

**Schuylkill Township Board of Supervisors**

v.

**Zoning Hearing Board of Schuylkill Township and Pohlig Builders, LLC.**

**Appeal of: Township of Schuylkill and Schuylkill Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2011.

Decided March 17, 2011.

Publication Ordered May 27, 2011.

---

Scot R. Withers, West Chester, for appellants.

John C. Snyder and Megan E. King, Wayne, for appellee.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BUTLER.

In this zoning appeal, the Schuylkill Township Board of Supervisors (Township) asks whether the Zoning Hearing Board of Schuylkill Township (ZHB) erred in granting Pohlig Builders, LLC's (Developer) request for a variance from the steep slope regulations contained in Section 1925 of the Schuylkill Township Zoning Ordinance of 1955 (zoning ordinance). The requested variance would allow Developer to disturb a relatively small area of steep slopes so that it could construct a bridge and culvert in connection with its proposed residential development. Discerning no error in the ZHB's grant of the variance, we affirm.

## I. Factual and Procedural Background

This case concerns Developer's efforts to develop a 65–acre tract on Valley Forge Road in Schuylkill Township, Chester County, which lies within an R–1 Low Density Residential District (subject property). Developer, the equitable owner of the subject property, seeks to develop the subject property for 51 single-family detached homes on 35,000 square foot lots.

The subject property is basically divided into two segments by a "finger-like" extension (inlet) of the Pickering Creek Reservoir, which is owned by Aqua Pa., Inc. (Aqua), a provider of public drinking water. The southern segment of the subject property is improved with an existing manor house, a carriage house and a tenant house, access to which is from the northern segment of the subject property over a driveway located within a 50–foot wide strip connecting the northern and southern segments of the subject property.

Developer filed a subdivision plan seeking to construct 36 homes on the southern segment of the subject property, which comprises about two-thirds of the total area of the subject property (45 acres). Developer's plan also contemplated construction of 15 homes on the remaining one-third of the subject property, the undeveloped northern segment (20 acres).

Developer and Aqua agreed to terms for an access easement pursuant to which Aqua agreed to allow Developer to construct a bridge and culvert over the finger of water [1] in order to provide access from the northern segment to the southern segment of the subject property. The proposed bridge and culvert would carry an

---

**1.** Developer characterizes the small body of water on the subject property as a "spit of the [r]eservoir [with] a small stream that enters that spit from the west." Appellee's Br. at 2. Developer notes its easement agreement with

Aqua required it to develop a new road to "cross the **stream** and not the Reservoir or the 'inlet' to the Reservoir, and to do so near the western portion of the subject property, just east of the strip." *Id.* at 3.

access road that would provide ingress and egress for the southern segment of the subject property. Aqua would not allow Developer to span the reservoir at another location.

That portion of Aqua's land on which the proposed bridge and culvert and part of the roadway lie is within the Township's "F" Flood Hazard District (FHD) and is burdened by constrained land, which is the subject of the zoning ordinance's steep slope regulations. These constraints prompted Developer to seek relief from the ZHB in the form of variances and special exceptions to permit construction of the bridge and culvert and associated structures, including the access road, on Aqua's land.

Relevant here, Developer sought a variance from the zoning ordinance's steep slope regulations to permit construction of a portion of the proposed bridge and culvert and access road on land containing slopes that exceed 25%. *See* Section 1925 of the zoning ordinance ("There shall be no erection of buildings or streets on land sloping greater than twenty-five (25) feet vertical in one-hundred feet horizontal, or a 25% slope. . . ."). Developer also sought an interpretation of the zoning ordinance that would permit the structures associated with its proposed bridge and culvert (abutments, retaining walls, fill and the access road) as accessory uses so as to obviate the need for additional zoning relief.[2]

After 12 hearings, the ZHB issued a lengthy decision in which it granted in part, and denied in part, Developer's requests for relief. As a small part of that much larger litigation, the ZHB granted Developer's request for a variance from Section 1925 of the zoning ordinance to allow construction of a portion of the proposed bridge and culvert on slopes greater than 25%. Additionally, the ZHB determined the structures associated with Developer's proposed bridge and culvert constituted accessory uses under the zoning ordinance.[3] Both Developer and the Township appealed to the Court of Common Pleas of Chester County (trial court).

Without taking additional evidence, the trial court issued a thorough and thoughtful opinion in which it affirmed in part and reversed in part the ZHB's decision. Among other things, the trial court affirmed the ZHB's grant of the variance from the steep slope regulations, and the ZHB's determination that Developer's proposed access road constituted an accessory use to the proposed bridge and culvert.[4] The Township appealed to this Court.

2. Developer later supplemented its application to include a validity challenge to five sections of the Township's Subdivision and Land Development Ordinance (SALDO), as well as a challenge to the filing fee and escrow required by the Township's Fee Schedule. Shortly thereafter, Developer again supplemented its application to include a validity challenge, or, in the alternative, a request for a variance from the zoning ordinance's FHD regulations, which prohibit removal of topsoil as well as cutting or removal of trees.

3. The ZHB also: granted Developer variances from Sections 1103(C)(2), (3) of the zoning ordinance in order to allow removal of topsoil, trees and other flora in the FHD; denied

Developer a variance from Section 1103(A) to allow "end walls" to be built within the FHD in conjunction with developer's proposed stormwater management system; concluded it lacked jurisdiction to determine the validity of the challenged SALDO provisions; and, denied Developer's challenge to the filing fee and escrow required by the Township's Fee Schedule. Additionally, the ZHB determined Developer no longer required a special exception under Section 1103(D)(1) of the zoning ordinance because Developer complied with this section.

4. As to Developer's appeal, the trial court reversed the ZHB's determination that it lacked jurisdiction to decide Developer's chal-

## II. Issues/Contentions

Initially, we note that the Township's brief only challenges the ZHB's grant of the variance from the zoning ordinance's steep slope regulations. As a result, Developer asserts the Township waived challenges to any other ZHB determinations. Because Developer is correct that the Township's brief only addresses the propriety of the grant of a variance from the steep slope regulations, we agree the Township did not preserve any other issues. *See, e.g., Commonwealth v. Montalvo,* 598 Pa. 263, 956 A.2d 926 (2008) (failure to brief issues results in waiver).

On appeal,[5] the Township asserts Developer's proposed road crossing of the reservoir inlet requires a use variance to cross a slope with a grade substantially greater than 25%. The Township argues, even if the variance from the steep slope restrictions is considered under a more relaxed standard, Developer was still required to prove unnecessary hardship. The Township points out that, although the ZHB found the proposed bridge and culvert would impact an area of steep slopes adjacent to the reservoir inlet, *see* ZHB Op., Finding of Fact (F.F.) No. 57, it nevertheless granted a variance on the theory that Developer's cutting and filling of the slopes would actually remove the slopes, thereby eliminating concerns over accelerated erosion or runoff. F.F. Nos. 59, 60. The Township challenges the ZHB's grant of the variance on four grounds.

### A. Unnecessary Hardship

The Township first challenges the ZHB's grant of the variance on the ground that Developer presented no evidence of unnecessary hardship. The Township asserts Developer did not prove unnecessary hardship occasioned by the physical conditions of the subject property, and it did not prove there were physical restraints that resulted in an inability to develop the subject property in strict conformity with the zoning ordinance.

The Township contends the ZHB did not make findings to support the existence of unnecessary hardship because it could not do so based on the evidence presented by Developer. In fact, the Township argues, the ZHB made no findings that explain how Developer satisfied any of the five requisite variance criteria; thus, the ZHB erred in granting the variance. Instead of applying the statutory variance criteria, the ZHB granted relief based on the theory that construction of the bridge and culvert would eliminate the steep slopes and thus eliminate the negative impacts that flow from construction on steep slopes. The Township contends such rationale effectively nullifies all zoning regulations protecting natural resources.

### B. Reasonable Use of Subject Property Absent Grant of Variance

The Township next asserts that the reason Developer did not prove unnecessary hardship is that it cannot because the subject property can be developed and put to reasonable use absent the grant of a variance.

To that end, the Township argues Developer can make reasonable use of the northern portion of the subject property without variance relief. The Township

lenges to the SALDO, resolved those challenges, and sustained Developer's challenge to the Township's filing and escrow fees.

5. Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.,* 873 A.2d 807 (Pa.Cmwlth.2005).

points out Sections 404 and 1927 of the zoning ordinance permit the use of "lot averaging" and would allow construction of the 15 homes proposed by Developer on the northern segment of the subject property.

Because the subject property can be reasonably used to develop buildable lots on the northern segment, the Township asserts Developer has a reasonable use of the subject property, and it is not entitled to the extraordinary grant of variance relief. *See Boyer v. Zoning Hearing Bd. of Franklin Twp.*, 987 A.2d 219 (Pa.Cmwlth. 2010) (upholding denial of steep slope variance to build single family home where property was currently in use for harvesting, sawing and selling timber); *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 894 A.2d 845 (Pa.Cmwlth.2006), *aff'd*, 594 Pa. 416, 936 A.2d 1061 (2007) (requested variance not required for reasonable use of property where landowner resided on property and operated his business as a permissible home occupation); *Zappala Grp., Inc. v. Zoning Hearing Bd., Town of McCandless*, 810 A.2d 708 (Pa.Cmwlth. 2002) (denying variance from steep slope regulations because the developer could develop part of the land unconstrained by prohibited steep slopes without the requested variance); *see also Rittenhouse Row v. Aspite*, 917 A.2d 880 (Pa.Cmwlth. 2006) (*en banc*); *Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila. (Eller Media Co.)*, 814 A.2d 847 (Pa.Cmwlth.2003).

## C. Financial Hardship

In connection with its "reasonable use" argument, the Township further maintains the only hardship Developer would suffer absent the grant of the variance is financial, which is insufficient to satisfy the hardship criterion. Because Developer can develop lots on the northern segment of the subject property without having to cross steep slopes, the Township contends, it is obvious the only reason Developer sought variance relief, was to allow the homes it proposes on the southern segment, so as to maximize its financial return. The Township argues economic maximization is not a proper basis for variance relief. *See Mucy v. Fallowfield Twp. Zoning Hearing Bd. of Washington Cnty.*, 147 Pa.Cmwlth. 644, 609 A.2d 591 (1992) (it is not sufficient to show mere economic hardship or that the property could be utilized more profitably if a variance were granted); *see also Jasy Corp. v. Bd. of Adjustment of Upper Moreland Twp.*, 413 Pa. 563, 198 A.2d 854 (1964) (financial hardship insufficient to warrant grant of variance).

## D. Self–Inflicted Hardship

As a final point, the Township contends any hardship suffered by Developer is self-inflicted. The Township asserts Developer is the equitable owner of the subject property pursuant to an agreement of sale which sets the purchase price at the greater of the total number of approved lots multiplied by an undisclosed amount, or a set undisclosed amount. The Township asserts that under the sales agreement, Developer is not obligated to purchase the subject property unless variances are obtained. Thus, it is Developer's desire to maximize the number of lots to be developed that creates the need to develop the southern segment of the subject property. The Township cites cases that stand for the proposition that, with respect to a landowner who purchases with knowledge of a property's condition and existing zoning restrictions, any hardship is self-inflicted where the landowner pays an unduly high price because he assumed the anticipated variances would justify the price. *See, e.g., Jasy.*

Based on these assertions, the Township contends the ZHB erred in granting Developer's requested variance from the zoning ordinance's steep slope regulations.

### III. Analysis

 This Court may not substitute its interpretation of the evidence for that of the fact-finder, the ZHB here. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa.Cmwlth.2005). It is the function of the fact-finder to weigh the evidence before it. *Id.* The fact-finder is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Id.* Assuming the record contains substantial evidence, we are bound by findings that result from resolutions of credibility and conflicting testimony. *Id.*

As to the criteria necessary to obtain a variance, Section 910.2 of the Municipalities Planning Code,[6] states:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant.... The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2.

### A. Nature of Variance

Here, Developer's proposed use of the subject property for a 51–home residential development is a permitted use in the R–1 zoning district in which the subject property lies. In addition, the ZHB determined the proposed bridge and culvert is a permitted use in the FHD, and its associated structures are permitted as accessory uses. F.F. Nos. 34–35, 44. The Township does not challenge these determinations; rather, it focuses on the ZHB's grant of the variance from the steep slope regulations.

The ZHB granted Developer a variance from Section 1925 of the zoning ordinance, which would permit disturbance of a small area of steep slopes and allow construction

---

**6.** Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as* *amended,* 53 P.S. § 10910.2.

of the proposed bridge and culvert. Section 1925 provides:

> Section 1925. *STEEP SLOPE REGULATIONS.* There shall be no erection of buildings or streets on land sloping greater than twenty-five (25) feet vertical in one-hundred (100) feet horizontal, or a 25% slope, provided, however, that the following uses may be located in areas having slopes greater than 25%:
>
> A. Passive parks may be permitted provided that their activities do not conflict with the use of the land as watershed.
>
> B. Tree farming, forestry, and other agricultural use may be permitted when conducted in conformance with conservation practices that ensure adequate protection against soil erosion.

Section 1925 of the zoning ordinance; Reproduced Record (R.R.) at 460a.

It is important to properly characterize the nature of the variance granted by the ZHB. On that point, the trial court observed, "[the] Township assumes that relief from the slope constraints is a use variance; however, a variance from steep slopes is a hybrid that is, strictly speaking, neither a use nor dimensional variance. [*Zappala Grp.*] ...." Tr. Ct., Slip Op., at 34.

■ In *Zappala Group*, this Court explained:

> Whether an applicant is seeking a dimensional or use variance, it must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. *Hertzberg v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). It is only the stringency of the standard in proving an unnecessary hardship that varies, depending on

whether a use or dimensional variance is sought. *Id.* [The applicant's] proposed use is indisputably permitted in [the applicable zoning district].... However, the [zoning district] prohibits uses of the land that are outside the strictures on protecting natural resources, including steep slopes. *Because this scenario is not like setbacks or other traditional dimensional variances and is not like seeking a use for the property outside of the uses enumerated in the [o]rdinance, it falls into a grey area.* However, whether we consider the request to be for a use or dimensional variance does not matter because, even under the looser dimensional variance standard, [the applicant] has still failed to make its case.[FN4]

---

FN4. *Hertzberg* provides that to justify the grant of dimensional variances, courts may consider multiple factors, including *"the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood."* In determining whether unnecessary hardship has been proven for a use variance, a court may consider whether *"*(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance."

*Zappala Grp.*, 810 A.2d at 711 n. 4 (emphasis added).

Although, as discussed more fully below, *Zappala Group* is factually distinguishable from the present case, like *Zappala Group* this case involves Developer's proposal to construct a permitted use in an area that contains steep slopes. Thus, the trial court aptly characterized the variance requested here as a "hybrid," with a less stringent hardship requirement. Trial Ct., Slip Op., at 34.

### B. Unnecessary Hardship

██ As to the hardship criterion, the ZHB made the following relevant findings concerning the unique physical characteristics of the subject property:

16. An extension of the Pickering Reservoir divides the [subject] [p]roperty into two parcels except for a strip of land on the western edge of the [subject] [p]roperty. (N.T. Pohlig, 1/10/08, p. 18; See Sheet Two of the Applicant's Exhibit "A–1 A")

17. Approximately two-thirds of the [subject] [p]roperty is located to the south of the dividing water, and approximately one-third to the north. (N.T. Pohlig, 1/10/08, p. 19)

18. The waterway is owned by [Aqua] (N.T. Pohlig, 1/10/08, p. 19)

19. [Aqua] retains ownership of much of the land abutting the finger of water. (N.T. Pohlig, 1/10/08, at p. 19)

20. The south side of the [subject] [p]roperty is accessed by a roadway across a strip of land.... (N.T. Pohlig, 1/10/08, p. 20)

21. The strip of land connecting the two sides of the [subject] [p]roperty is approximately 50 feet in width. (N.T. Pohlig, 1/10/08, p. 20)

22. A driveway/road crosses that strip of land for access to the south side for a manor house, a carriage house, and a tenant house. (N.T. Pohlig, 1/10/08, p. 20)

. . . .

48. *The strip of land of approximately 50 feet in width on the western side of the [subject] [p]roperty cannot support a road that would meet the terms and conditions of the Ordinances of Schuylkill Township.* (N.T. Pohlig, 1/23/08, Eder p. 36–37)

49. *The inability to construct a road across this access strip to conform to the* *Township Ordinances was not refuted by the Township witnesses.*

. . . .

51. Various Township witnesses offered alternative bridge designs and placements, which one would assume, would have a road on top.

F.F. Nos. 16–22, 48–49, 51 (emphasis added).

Additionally, the ZHB made the following findings regarding the impact of Developer's proposed bridge and culvert on the subject property's steep slopes:

57. The proposed bridge [and] culvert would impact an area of steep slopes on the southern side of the [subject] [p]roperty. (Applicant's Exhibit A–1a Sheet 2 and 12; A/15)

58. [Developer's] Engineer testified that the bridge [and] culvert would have less of an impact on the area of steep slopes on the [subject] [p]roperty at its proposed location. (N.T. Pohlig, 01/10/08, Eder p. 52)

59. [Developer's] Engineer testified that concerns about accelerated erosion or run off on the steep slopes would not be a factor, as the slopes would be buried beneath several feet of fill, the road and everything on top of that. (N.T. Pohlig, 01/10/08, Eder p. 89)

60. [Developer's] Engineer testified that in accordance with the factors outlined above, the steep slopes would no longer exist. (N.T. Pohlig, 01/10/08, Eder p. 92)

F.F. Nos. 57–60.

The ZHB explained its rationale for granting the variance as follows:

[Developer] ... requests a variance from ... Section 1925 involving steep slopes. The testimony is rather clear that the placement of the proposed bridge was evaluated to have the least possible impact on sensitive areas, one

of which are [sic] the steep slopes. The testimony is also clear that the placement of this proposed bridge in this location would impact the steep slopes on only the southern portion of the [subject] [p]roperty. The Township's reply was to change the location of the bridge, which first of all would be legally impossible due to Aqua's ownership of abutting land, or to construct a bridge of such length that the engineering requirements would be difficult.

The Township's other locations would have a greater impact upon areas of steep slopes. The Township did not refute [Developer's] testimony that the proposed area has the least impact on the area of steep slopes. In addition, the end result of the construction will be the removal of steep slopes, which will result in eliminating the potential undesirable elements that such slopes, by their existence, creates [sic].

. . . .

[Developer], through its construction of the bridge, will actually eliminate the limited steep slopes and thus eliminate the negative impacts that flow from construction on steep slopes. *The [subject] [p]roperty . . . has a unique physical characteristic which would prohibit the development of the total property in accordance with the [z]oning [o]rdinance and which was not created by [Developer]. The variance will not alter the essential characteristic of the neighborhood, as [Developer's] proposed development is permitted by the [z]oning [o]rdinance. In addition, the placement of the bridge will eliminate the negative steep slope impact.*

ZHB Op. at 18, 21 (emphasis added). The ZHB also stated:

*The sole access between the two sides of the [subject] [p]roperty is an approximately 50–foot wide strip of land. [Developer's] witnesses testified that this strip of land will not support a roadway, as one could not be built thereon to comply with the Ordinances of Schuylkill Township. The Township, through its witnesses, did not contradict this evidence.* The only logical conclusion to be drawn therefrom is that this strip of land is a physical hardship which denies [Developer] the ability to develop the [subject] [p]roperty in accordance with the [z]oning [o]rdinance.

*Id.* at 16 (emphasis added).

As is evident from the record citations for each of its pertinent findings, Developer's evidence was accepted, and it supports the ZHB's key findings that: the topography/unique physical characteristics of the subject property necessitate relief; the proposed location of the bridge would have less impact on sensitive areas than the Township's alternative proposals; and, the limited steep slope disturbance would not cause increases in erosion or run-off because Developer would integrate the slopes into the cut and fill required for construction of the bridge and culvert.

Moreover, the Township's witnesses did not refute the fact that it is impossible to construct an access road utilizing the existing 50–foot wide strip that would comply with the Township's ordinances. These determinations are sufficient to satisfy the unnecessary hardship criterion. This is particularly true given that Developer's proposed use of the subject property is permitted as of right, and the variance from the steep slope requirement falls into a "grey area," which this Court previously analyzed under the relaxed *Hertzberg* standard. *Zappala Grp.*[7]

7. Of further note, as to the characteristics of the surrounding neighborhood, a June 2007

letter from the U.S. Department of the Interior, Fish and Wildlife Service (which Develop-

### C. Reasonable Use of Subject Property/Financial Hardship

■ The Township asserts variance relief is not warranted here because Developer can make reasonable use of only the northern segment of the subject property without the need for a variance. In support, the Township cites the zoning ordinance's "lot averaging" provisions, arguing the application of these provisions would enable Developer to construct up to 21 lots on the northern segment of the subject property. The Township argues variance relief is not proper where, as here, the only hardship stems from an applicant's desire to maximize profitability of his land.

Rejecting this argument, the trial court stated:

> Citing *Society Created to Reduce Urban Blight (SCRUB) v. Philadelphia Zoning Board,* 804 A.2d 116 (Pa. Cmwlth.2002), [the] Township ... presses the argument that the steep slopes variance should not have been granted because [D]eveloper has the development alternative of utilizing lot averaging on the [subject] property's north side. *In rejecting this contention we observe that the area of steep slopes for which a variance was granted impacts only 945 square feet of land, but would result in Developer's inability to build [36] single family detached houses on the [subject] property's south side which comprises two-thirds of the [subject] property.* N.T. 8/21/08, p. 100, Ex. T–22a; N.T. 1/10/08, pp. 77 et seq. Ex. A–15. SCRUB rejected the notion that un-

necessary hardship warranting a *use* variance was justified to permit an advertising sign on a commercial building that was 80% tenant occupied and not valueless simply to earn revenue for building repairs. *Id.,* 804 A.2d 116 [8] .... [The] Township assumes that relief from the slope constraints is a use variance; however, a variance from steep slopes is a hybrid that is, strictly speaking, neither a use nor dimensional variance.... *Instantly ... were [the] Township's argument accepted, Developer would be precluded from reasonably developing two-thirds of its unconstrained land for a permitted use based upon a topographical constraint affecting only 945 square feet of a 65 acre tract.*

Tr. Ct., Slip Op., at 33–34 (citations omitted) (emphasis added). The trial court further stated:

> Considerable attention was given during the testimony to land use alternatives, including the Township's suggestion that the lot averaging provisions of the zoning ordinance should be employed to develop only the land north of the [r]eservoir, with the southern segment retained as open space and the 3 existing houses. N.T. 8/21/08, pp. 53–120; N.T. 10/23/08, pp. 3–28. Township[ ] consultant[ ] Larry S. Waetzman, a professional land planner developed a lot averaging concept plan depicting 21 lots, opining the plan could be implemented on the land north of the reservoir. Exs. T–22 & T–22A. [Developer] had originally considered retaining the north

er obtained approval from as a result of concerns over wildlife in the area), states: "As depicted in recent aerial photos ... residential developments similar in size and density to the one proposed are found on the east side of the reservoir ... and on the west side of the reservoir, immediately north of the proposed development...." R.R. at 423a.

**8.** In its brief to this Court, the Township also cites *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of City of Philadelphia (Eller Media Co.),* which held a use variance was not justified to permit an outdoor advertising sign where the property at issue was currently being used as a small used car dealership.

side of the [subject] property as open space because it is wooded and a bald eagle habitat, but never considered not developing the two-thirds of the [subject] property south of the [r]eservoir. Developer's 51–lot plan, including development of 15 houses on the northern segment, was approved by the United States Department of Interior, Fish and Wildlife Service and by the Pennsylvania Game Commission as respects wild life protection with Developer's agreement to implement the measures stated in those approvals. *N.T. 10/23/08, pp. 38–47; Exs. A–29 & A–30.* [Developer's principal] also testified that Developer's plan of 51 lots meets the zoning ordinance's density provisions, which actually allow a greater number of lots than Developer's plan proposes. *N.T. 10/23/08, p. 45 . . . .*

Tr. Ct., Slip Op. at 30–31.

Based on the minor steep slope disturbance,[9] and the ZHB's findings regarding the hardship caused by the inability to access the much larger, southern segment of the subject property, we reject the Township's argument that variance relief is improper because Developer can make reasonable use of only the northern segment of the subject property. As the trial court recognized, but for the access issue, development of the southern segment would not require variance relief.

In addition, the Township's argument lacks a basis in fact. Without some form of variance, Developer cannot make any use whatsoever of the northern segment of the subject property. This is because any use of the northern segment will require subdivision from the southern segment, upon which three structures are in current use. However, because the preexisting access between the segments is so inade-

quate, it does not conform to the Township's Subdivision and Land Development Ordinance requirements. In other words, with the preexisting access, no subdivision would be permitted without a variance. In sum, the Township's position contemplates no further development of the entire 65 acre tract.

Not surprisingly, the Township's witnesses acknowledged the need for road access between the northern and southern segments of the subject property in order to subdivide and convey even the existing three dwellings on the southern segment. *See* R.R. at 198a–201a (testimony of Township planner Thomas Comitta); R.R. at 360a–364a (testimony of Township planner Larry Waetzman); N.T., 8/21/08, at 25–26 (testimony of Township Engineer John Sartor). In fact, at hearing before the ZHB, Developer presented an alternative plan from Thomas Comitta, a Township planning consultant, which contemplates development of the southern segment of the subject property and shows a proposed access road between the two segments in a location that is in "virtually the same place" as the location proposed by Developer. N.T., 8/23/08 at 37; *see* R.R. at 419a (Applicant's Ex. 28). Thus, even the Township's witnesses acknowledged the need for an access road between the two portions of the subject property in order to permit reasonable development.

Moreover, the ZHB found the existing 50–foot wide strip could not support a road that would satisfy the provisions of the Township's ordinances, and the Township's witnesses did not refute this point. *See* F.F. Nos. 48, 49. As such, it is clear that access between the northern and southern segments of the subject property cannot be achieved without variance relief. Be-

9. The 945–square foot area of steep slopes that would be disturbed by Developer's pro-

posal accounts for a mere *.03%* of the total 65–acre area of the subject property.

cause the Township's witnesses acknowledged the need for access in order to permit reasonable development of the southern segment and because the ZHB found Developer's proposed bridge and culvert would have the least possible impact on sensitive areas, the variance granted is necessary.

In addition, the cases cited by the Township do not compel a different result. To that end, this case is distinguishable from our recent decision in *Boyer*. In *Boyer*, we declined to disturb a zoning board's denial of a variance from steep slope restrictions where the record supported the zoning board's finding that any alleged unnecessary hardship did not arise from the unique physical conditions of the applicants' property. Because the alleged hardship was caused by circumstances generally created by the provisions of the ordinance, we determined the zoning board did not err in denying the applicants' variance request.

Unlike in *Boyer*, the ZHB here found the unnecessary hardship arose from the unique physical characteristics of the subject property as opposed to circumstances generally created by the provisions of the zoning ordinance. Because the record supports the ZHB's findings, and these findings in turn support a conclusion that Developer proved the requisite unnecessary hardship, the Township's reliance on *Boyer* is misplaced.

In addition, *Rittenhouse Row*, also cited by the Township, is distinguishable. There, we affirmed a common pleas court's denial of a variance on the ground the applicant "failed to present any evidence of unique physical conditions that prevented a reasonable use of the property." *Id.* at 885. Additionally, we determined the applicant did not prove its proposed use was consistent with the public interest.

Here, unlike in *Rittenhouse Row*, the record supports the ZHB's findings regarding the unique physical conditions of the subject property. Further, unlike in *Rittenhouse Row*, the ZHB's supported findings here indicate the grant of the variance will not negatively affect the public interest.

Also distinguishable from the present case is *Wilson*, which is briefly referenced by the Township. There, our Supreme Court upheld the denial of an applicant's request for a use variance where the applicant did not prove an unnecessary hardship that was unique to his property as distinguished from a hardship arising from the impact of zoning regulations on the entire district.

Here, unlike in *Wilson*, the record supports the ZHB's findings that the unique physical conditions of the subject property created the hardship. Thus, *Wilson* is not implicated on the facts before this Court.

In addition, this case is factually distinguishable from *Zappala Group*, referenced above. In *Zappala Group*, a developer sought to build office buildings with associated parking areas on a tract of land with an available area of 7.65 acres. While the developer's proposed uses were permitted in the applicable zoning district, the proposal required disturbance of steep slopes, which existed on 5.7 of the 7.65 available acres. While acknowledging the requested variance from the steep slope regulations fell into a "grey area," this Court nevertheless analyzed the requested variance under *Hertzberg*. Ultimately, we concluded the proposed reconfiguration of 72% of the property was "more than the *de minimis* amount that *Hertzberg* envisions." *Id.* at 712.

Unlike *Zappala Group*, where the applicant's variance request contemplated a major disturbance of steep slopes which occupied nearly three-quarters of the property,

here Developer's variance request involves a minor steep slope disturbance (945 square feet (.03%) of the total 65–acre subject property).

Thus, the cases cited by the Township do not compel a different result.

### D. Self–Inflicted Hardship

■ Nevertheless, relying on older authority, the Township argues that where, as here, the hardship is self-inflicted, the grant of a variance is not proper. The Township cites several cases that stand for the proposition that, with respect to a landowner who purchases with knowledge of a property's condition and existing zoning restrictions, any hardship is self-inflicted where the landowner pays an unduly high price because he assumed the anticipated variances would justify the price. This argument fails.

In *Manayunk Neighborhood Council v. Zoning Board of Adjustment of City of Philadelphia*, 815 A.2d 652 (Pa.Cmwlth. 2002), this Court set forth the following analysis regarding a claim of self-inflicted hardship:

> While older cases explain the "purchaser with knowledge" concept ... more recent cases recognize that where hardship arises from intensity of restriction, the right to relief runs with the land. Unless the hardship arises from the purchase itself, as where the purchase price was too dear, transfer of the property does not create the hardship. Thus, pre-purchase knowledge of zoning restrictions limiting development, without more, does not create a hardship.

*Id.* at 657 (citations omitted).

In *Wilson*, our Supreme Court agreed with this Court's formulation of the self-inflicted hardship analysis in *Manayunk*. Essentially, the Court restricted the concept to a situation where the purchase price is too dear, the owner allowed the property to deteriorate, or where the transfer itself caused the hardship. Thus, pre-purchase knowledge of zoning restrictions, without more, does not create hardship. *Id.*

Here, the ZHB made no findings that Developer's hardship was self-inflicted. Indeed, the ZHB's decision contains no findings indicating that the purchase price of the subject property was too dear, that Developer or any prior owner allowed the subject property to deteriorate, or that the transfer itself caused the hardship. Thus, the ZHB did not accept the Township's arguments and evidence on this point.

Nevertheless, the Township notes Developer's agreement to purchase the subject property fixes the price at the greater of the total number of approved lots multiplied by an undisclosed amount, or a set undisclosed amount, and Developer is not obligated to purchase the subject property unless variances are obtained. However, the Township cites no evidence that Developer intends to pay an excessive price for the subject property in anticipation of receiving a variance. *See Solebury Twp. v. Solebury Twp. Zoning Hearing Bd.*, 914 A.2d 972 (Pa.Cmwlth.2007) (rejecting a township's claim of self-inflicted hardship where it presented "no quantification" to show that applicants for variance paid an overly excessive amount for their lot in expectation of receiving the variance). Because the hardship here results from the natural conditions of the subject property rather than from its purchase, the Township's self-inflicted hardship argument fails. *Id.*

Based on the foregoing, we affirm.

### *ORDER*

**AND NOW,** this 17th day of March, 2011, the order of the Court of Common

Pleas of Chester County dated April 2, 2010, is **AFFIRMED**.