# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joyce Outdoor Advertising, LLC,   :
                    Appellant   :
                             :
            v.          :   No. 195 C.D. 2020
                             :   ARGUED:  April 15, 2021
Zoning Hearing Board of the Borough  :
of Moosic and Moosic Borough and  :
Hemingway Limited Partnership     :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  August 2, 2021**


Applicant, Joyce Outdoor Advertising, LLC, appeals from an order of the Court of Common Pleas of Lackawanna County that (1) affirmed the decision of the Zoning Hearing Board of the Borough of Moosic (ZHB) denying Applicant's application for a use variance to erect a billboard in the Borough; and (2) denied Applicant's land use appeal and motion to present additional evidence.[1]  We affirm.

Applicant is the lessee of a 12.65-acre undeveloped property located on Montage Mountain Road in the Borough's commercial general (C-2) zoning district. (ZHB's Feb. 6, 2019 Dec., Finding of Fact "F.F." No. 2.)  Originally 17.13 acres, the Pennsylvania Department of Transportation condemned and acquired 4.48 acres in 2001 as part of the Interstate 81 ramp project and paid the property owner

---

[1] The ZHB joins in the briefs of the Borough and Hemingway Limited Partnership.

$925,000.[2]  (*Id*., F.F. No. 11.)  Steeply sloped, the remaining property contains wetlands, a flood plain, and a portion of Stafford Meadow Brook.

In 2016, Applicant applied for zoning relief because billboards are a permitted use only in manufacturing (M) zoning districts under the Moosic Borough Zoning Ordinance.  Applicant proposed a double-sided outdoor advertising sign, 35' in height and measuring 10' x 30' (300 square feet).  One side would be digital and the other side conventional.  (*Id*., F.F. No. 1.)  After the ZHB unanimously voted to deny the zoning application, Applicant filed its first land use appeal with the trial court.  In March 2018, Applicant filed its first motion to present additional evidence.  Notwithstanding the objections of the Borough and Hemingway Limited Partnership (an objecting neighboring property owner and the developer of Glenmaura),[3] the trial court granted Applicant's first motion and remanded the matter to the ZHB.  On remand, the ZHB heard additional testimony in July and August 2018.  Once again, the ZHB unanimously denied the zoning application.

In March 2019, Applicant filed its second land use appeal.  In September 2019, Applicant filed its second motion to present additional evidence,

---

[2] The 4.48 acres were apportioned as follows:  2.18 acres for a required right-of-way; 1.05 acres for a required right-of-way access for a utility access road; and 1.25 acres for a required right-of-way for a borough street.  (ZHB's Aug. 20, 2018, Remand Hr'g, Ex. 11, July 11, 2018, Pet. for Appt. of a Bd. of Viewers at 1-3; Reproduced R. "R.R." at 1152a-54a.)  The $925,000 was apportioned as follows:  $818,910.98-land; $500-limited reimbursement for appraisal, attorney, and engineering fees; and $105,589.02-delay damages.  (*Id*., Ex. 12, Nov. 22, 2006, Stip. of Settl't at 1-4; R.R. at 1157a-60a.)

[3] Glenmaura is a planned, mixed-use development that includes shopping, commercial, residential, and recreational uses.

which the ZHB, Hemingway, and the Borough opposed. Following the trial court's denial of both the appeal and the motion, Applicant's appeal to this Court followed.[4]

On appeal, Applicant's cognizable issues are as follows:[5] (1) whether the ZHB erred in denying Applicant's application for a variance; and (2) whether the trial court erred in how it chose to adjudicate Applicant's second land use appeal.[6]

**I**

Pursuant to Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[7] which the Borough adopted, the power to grant a variance is limited to only those circumstances where the applicant proves: that a zoning restriction imposes an unnecessary hardship due to unique physical conditions peculiar to his property that are not self-created; that the requested variance is necessary to enable

---

[4] Where the trial court takes no additional evidence we may determine, based upon the issues raised, whether the ZHB committed an error of law or made findings of fact that are not supported by substantial evidence. *Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 504 (Pa. Cmwlth. 2018). Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

[5] Given our resolution in this matter, we need not consider whether the ZHB erred in determining that the proposed billboard did not meet the 2,000' separation requirement found in Section 300-30(F)(3)(b) of the Zoning Ordinance due to the existence of an outdoor advertising sign 1,410' away on Interstate 81.

[6] In the guise of additional issues, Applicant argues that the ZHB's findings of fact are not supported by substantial evidence, that the ZHB failed to show its reasoning for certain findings, and that it disregarded relevant, competent evidence. However, Applicant's contentions primarily are tantamount to challenges to the ZHB's credibility determinations and decisions as to what weight to afford the evidence. If the record contains substantial evidence, we are bound by the ZHB's findings that result from its resolution of credibility and conflicting testimony. *Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260, 1266 (Pa. Cmwlth. 2011). Additionally, a careful reading of the ZHB's decision reveals that it made the requisite findings of fact and provided adequate rationale for each of its determinations. Finally, there is support in the record for the findings of fact essential to the ZHB's decision.

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, No. 170, 53 P.S. § 10910.2.

3

a reasonable use of the property; that the grant of a variance will not alter the essential character of the neighborhood, nor substantially or permanently impair appropriate use or development of adjacent property, nor be detrimental to the public welfare; and that the requested variance represents the minimum variance that will afford relief and the least possible modification of the requirement. Zoning Ordinance, § 300-40(A). "The burden of an applicant seeking a zoning variance is heavy, and variances should only be granted sparingly and only under exceptional circumstances." *Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34 A.3d 286, 296 (Pa. Cmwlth. 2011) (citation omitted).

We turn first to the criterion requiring that Applicant establish that there are unique physical conditions peculiar to the property and that any alleged unnecessary hardship is due to such conditions and not conditions generally created by the Zoning Ordinance in the area where the property is located. Applicant asserted that the subject property was unique as compared to the neighboring properties due to its bowl shape and steep slopes. However, the evidence reflects and the ZHB found that the surrounding properties on the mountain and the subject property are sloped and share similar topography that presents challenges to development. (ZHB's Feb. 6, 2019, Dec., F.F. Nos. 16 and 28.) In support, the ZHB credited the testimony of Joseph Stachokus, P.E., that the lot upon which the proposed billboard would sit is not unique as compared to the neighboring properties. (*Id*. at 5 and 11.) Noting his experience with developing nearby projects such as the Shoppes at Montage and the Exxon Gas station, Stachokus stated that "[a]ll of the developments he has worked with on the mountain [have] required cutting and filling to level the topography which is hilly and rocky." (*Id*. at 5.) Additionally, Stachokus testified that "most of the lots up on the mountain for

4

development have anywhere from 30[-] to 100[-]foot difference in elevation across the parcels . . . [and] . . . this 12[-]acre parcel is similar to that." (ZHB's Aug. 20, 2018, Hr'g, Notes of Test. "N.T." at 130; Reproduced R. "R.R." at 686a.) He explained: "There is a grade drop-off off of Montage Mountain Road, because when that road was constructed, they needed to provide the necessary grade from the 81 interchange down to Glenmaura, which created the embankment that's there now. The topography–multiple lots on the mountain have wetlands that they have to deal with." (*Id.*) Additionally, the properties located in the planned development zone where Glenmaura is located and the C-2 zoning districts share the same billboard restriction. Accordingly, we agree with the ZHB that Applicant failed to satisfy the unique physical conditions criterion.

We turn next to the criterion requiring that Applicant prove that the requested variance is necessary to enable a reasonable use of the property. Permitted uses in the C-2 zoning district include but are not limited to office buildings, hotels, motels, commercial buildings, and large-scale developments. (ZHB's Feb. 6, 2019, Dec., F.F. No. 3.) Applicant maintained that treacherous topographical features on the property, including wetlands, Stafford Meadow Brook, the floodplain, and Norwich soils, rendered the property undevelopable for the permitted uses. Additionally, Applicant asserted an inability to construct an access driveway to Montage Mountain Road.

Applicant's position is without merit. The ZHB concluded, and the evidence reflects, that the subject property could be conformed for a use permitted in the C-2 zoning district "at a reasonable expense reflective of neighboring land currently under development[] as well as[] lands previously developed." (*Id.*, F.F. No. 26.) In support, it credited Stachokus's testimony that approximately 2.46 acres

5

of the subject property were developable, noting similarly situated parcels of lands such as the Shoppes at Montage, the Exxon Gas station, and the Glenmaura Senior Living project. (*Id*. at 5, 10-11.) Stachokus estimated that the cost of development would be $602,000 and that the cost of an access road would be $319,728.[8] (ZHB's Aug. 20, 2018, Hr'g, N.T. at 111-12; R.R. at 667a-68a.) The development cost included leveling the land to make a flat pad and bringing the utilities to the pad area. (*Id*. at 110-11; R.R. at 666a-67a.) The road costs included grading, the pavement, the concrete curbing, and the guiderail. (*Id*. at 112; R.R. at 668a.)

Moreover, the ZHB rejected Applicant's argument that an access road could not be constructed. The ZHB accepted Objector's Exhibit 2, Stachokus's plan for driveway access reflecting a driveway that complied with the sight line and slope requirements of the Zoning Ordinance. (ZHB's Feb. 6, 2019, Dec., F.F. No. 21.) Specifically, Stachokus "testified that a roadway to ingress and egress the property is accessible on the [n]orthern end of the property with a [twenty-four] foot access road, and presented a concept map for the [ZHB's] review." (*Id*. at 5.) Consequently, based on Stachokus's testimony and plan, the ZHB found that the subject property could be developed economically.[9] (*Id*., F.F. No. 22.)

---

[8] Stachokus also referenced the eminent domain documents, stating that the $319,728 was included in the original figure. (ZHB's Aug. 20, 2018, Hr'g, N.T. at 112; R.R. at 668a.) However, how the property owner funds development of the access road and whether he already received such funds is not before us. Accordingly, while Stachokus's testimony as to the cost of the access road is relevant, his testimony as to what portion the property owner may or may not have received in the eminent domain proceeding is speculative.

[9] Applicant makes much of the fact that the ZHB permitted Robert Pomento to testify about an access driveway because he was certified as a construction expert such that he should not have opined as to matters relating to engineering and land use. Given the fact that the ZHB relied upon the testimony of a professional engineer, Applicant's argument is of no moment.

6

Further, it is irrelevant that Objector's witnesses presented what counsel for Applicant later characterized as conflicting plans as to the potential location for an access driveway. It is within the purview of the ZHB to consider the evidence, to determine credibility and the weight of the evidence, and to resolve conflicting evidence. *Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260, 1266 (Pa. Cmwlth. 2011). The fact that Objector's evidence seemingly was conflicting was merely a factor for the ZHB to consider in its capacity as the factfinder. Accordingly, the ZHB's finding that the property owner could make productive use of the land without the variance was supported.

We turn now to the criterion requiring that Applicant establish that the grant of a variance will not alter the essential character of the neighborhood. Applicant asserted that the subject property is along a four-lane highway in a commercial district and, accordingly, granting the variance would not alter the essential character of the neighborhood. The ZHB disagreed, determining that "the granting of a use variance for an outdoor advertising sign would change the character of the development on the mountain." (ZHB's Feb. 6, 2019, Dec. at 10.) In support, the ZHB observed that "[v]arious commercial property owners and residential property owners testified as to adverse effects on property values, quality of life and the planning process that protects their properties from the proposed billboard." (*Id.*, F.F. No. 17.) In general, they testified that the proposed billboard would be located at the gateway to Glenmaura, that they would be able to see the billboard from their homes, and that the content of the billboard might be objectionable.[10] (*Id.*)

---

[10] The ZHB summarized the property owners' testimony. James Snyder and Benjamin Accardi testified as to their fears about traffic safety, with Accardi referencing possible property devaluation. (ZHB's Feb. 6, 2019, Dec. at 3.) Laurie Fitzsimons testified that she relocated to Moosic partially because of the aesthetics of the Montage area and the lack of billboards and **(Footnote continued on next page…)**

7

In addition, the ZHB emphasized the Borough Solicitor's statement "on the record that the absence of billboards on Montage Mountain Road was intentional." (*Id*., F.F. No. 18.) The ZHB observed: "Clearly the restrictions on billboards were intentionally [sic] and well[-]planned by the Borough." (*Id*.) Accordingly, the ZHB found and the accepted evidence reflects that granting the variance would alter the essential character of the neighborhood. (*Id*., F.F. Nos. 34 and 35.)

## II

We turn next to Applicant's arguments that the trial court improperly adjudicated the second land use appeal. Applicant contends that the trial court erred in denying Applicant's second motion to present additional evidence, erred in not hearing the second land use appeal *de novo*, and violated Applicant's due process rights by not holding oral argument on the second land use appeal. In rendering these arguments, Applicant acknowledges that the trial court had no obligation to permit additional evidence and that had the court decided to do so, it intended to limit the scope to prevent a full redo of the zoning proceedings. Nonetheless, Applicant argues that the trial court's handling of the second land use appeal was prejudicial and constituted a deprivation of due process.

---

commercialization of the Glenmaura Development. She also expressed a concern about traffic safety. (*Id*.) Carolyn Wallace testified that she did not want to see a billboard from her back deck and feared that it would feature advertisements for adult businesses such as a billboard near the airport. (*Id*. at 4.) Joseph Paone stated that a digital display would present a safety hazard for the driving public and cause distractions. (*Id*.) Thomas Mallis testified that a billboard at the entry way to Glenmaura would adversely affect the property values of the homes located there. (*Id*.) Richard Angelicola, developer of the Glenmaura Senior Living project, testified that the billboard would be directly visible from his property, that it would have an adverse effect on his business and property value, and that he would not have purchased his property had he known that a billboard would be permitted on the subject property. (*Id*.)

Section 1005-A of the MPC[11] provides guidance to a trial court on how to adjudicate a land use appeal. In pertinent part, Section 1005-A provides:

> Hearing and argument of land use appeal
>
> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . . . If the record below includes findings of fact made by the . . . board . . .whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the . . . board . . . shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

53 P.S. § 11005-A. The decision to permit additional evidence lies within a trial court's discretion, *Crystal Forest Associates, LP v. Buckingham Township Supervisors*, 872 A.2d 206, 213 (Pa. Cmwlth. 2006), but only where the party seeking to submit it demonstrates that the record is incomplete because the party was denied the opportunity to be fully heard or because relevant testimony was offered and excluded. *Piper Grp., Inc. v. Bedminster Twp. Bd. of Sup'rs*, 992 A.2d 224, 238 (Pa. Cmwlth. 2010).

In the present case, the trial court did not hear the second land use appeal *de novo* because it concluded that the record below was complete, and that Applicant was afforded ample opportunity to produce relevant evidence. (Trial Ct.'s

---

[11] Added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A.

9

Jan. 17, 2020, Op. at 4-5.) Additionally, the trial court denied Applicant's second motion to present additional evidence pertaining to the following: (1) wetland delineation regarding the location, size, scope, and impact on any development; (2) the cost of an access road; (3) whether any hardship was self-created; and (4) submission of visuals of the property, *i.e.*, a site visit. Preventing what most likely would have resulted in a third remand hearing, the trial court determined that there was no basis for reopening the record because much of the testimony at the two remand hearings centered on the presence of wetlands and the flood plain. Further, noting Applicant's assertion that a wetlands coordinator opined that the flood plain maps might be outdated and, therefore, inaccurate, the trial court concluded that Applicant otherwise failed to offer a reason why it did not pursue a water delineation expert earlier. (*Id*. at 6.)

We conclude that the trial court did not abuse its discretion in declining to hear the second land use appeal *de novo* and in denying the second motion to present additional evidence. In addition to the reasons set forth by the trial court, we emphasize the ZHB's finding that "[t]he viability and cost of constructing an access driveway on the subject property onto Montage Mountain Road occupied a large portion of the [ZHB's] three hearings . . . ." (ZHB's Feb. 6, 2019, Dec., F.F. No. 12.) Additionally, where an applicant fails, at an appropriate earlier stage in the proceedings, to establish that any alleged hardship was not self-created and to submit sufficient visual aids depicting the subject property, a record is not rendered incomplete and additional evidence is not warranted.

As for not holding oral argument on the second land use appeal, we note that the trial court held what was tantamount to oral argument in this matter on both August 19, 2019, and October 7, 2019. Notwithstanding the fact that the

10

transcripts reflect ample dialog between counsel and the trial court, it is clear that Applicant did not suffer prejudice or a deprivation of due process by the manner in which the trial court chose to conduct and afford oral argument.

Accordingly, we affirm.[12]

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

_____

[12] As for Applicant's concerns regarding the trial court's denial of its emergency motion for reconsideration and decision not to issue a written order, any determination falls within the trial court's sound discretion. *Belleville v. David Cutler Grp., Inc.*, 118 A.3d 1184, 1195-96 (Pa. Cmwlth. 2015). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. at 1195 [quoting *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996)]. There is no indication in the present case that the trial court abused its discretion. In any event, Applicant filed a timely notice of appeal from the trial court's order on the merits.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joyce Outdoor Advertising, LLC,    :
                Appellant    :
                         :
           v.             :    No. 195 C.D. 2020
                         :
Zoning Hearing Board of the Borough    :
of Moosic and Moosic Borough and    :
Hemingway Limited Partnership    :

# O R D E R

AND NOW, this 2nd day of August, 2021, the order of the Court of Common Pleas of Lackawanna County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita