IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Apex Properties      :
Unlimited from the decision of        :
Zoning Board of Adjustment            : No. 1164 C.D. 2020
                                      : Submitted: March 7, 2022
Appeal of: Apex Properties Unlimited  :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: May 18, 2022

Appellant Apex Properties Unlimited (Apex) appeals from the Court of Common Pleas of Philadelphia County's (Common Pleas) September 30, 2020 order, through which Common Pleas affirmed the May 22, 2019 decision by the City of Philadelphia's (City) Zoning Board of Adjustment (Board) to deny Apex's steep slope variance application. After thorough consideration, we vacate Common Pleas' order and remand with instructions that it vacate the Board's decision and, in addition, that it further remand this matter so that the Board can issue a new, legally sufficient adjudication.

## I. Background

This appeal focuses upon two adjacent, residentially zoned, Apex-owned parcels of land, which are respectively located at 6558 Lawnton Street and 6560 Lawnton Street, in Philadelphia, Pennsylvania. Reproduced Record (R.R.) at 16, 18, 29-32;[1] Board's Findings of Fact and Conclusions of Law (Decision), Findings of

---

[1] Apex has failed to comply with the Rules of Appellate Procedure's technical requirements regarding how a reproduced record's pages must be numbered. *See* Pa. R.A.P. 2173 ("the pages of
**(Footnote continued on next page…)**

Fact (F.F.) ¶1. These properties are situated on hilly terrain in the Wissahickon Watershed Overlay District (WWOD), and contain inclines in certain areas that range from 22% to 67%. Decision, F.F. ¶¶14, 18; R.R. at 14; Board Hearing Tr., 5/22/19, at 24. On November 16, 2018, Apex filed an application with the City's Department of Licenses and Inspection (L&I), through which Apex requested approval of its desired plan to both consolidate these two parcels into one lot and then to erect a single-family home on the unified property. R.R. at 17. L&I denied Apex's application on January 23, 2019, on the basis that it did not satisfy the steep slope protection requirements (Steep Slope Ordinance) contained in the City's Zoning Code[2] (Code), or comply with the Code's relevant setback standards. *Id.* at 16. At that point in time, the Steep Slope Ordinance stated, in relevant part:

> (a) Applicability.
>
> > (.1) These steep slope protection standards shall apply in all zoning districts to slopes of 15% or greater on any lot or portion(s) thereof located within the "Steep Slope Protection Area," as shown on the City of Philadelphia Steep Slopes Map[3] maintained by the [City's Planning] Commission [(Commission)]. . . .
> >
> > (.2) When an application for a permit or approval under this . . . Code includes any land that is located within the "Steep Slope Protection Area" of the City of Philadelphia Steep Slopes Map, the City may require that the applicant submit a topographic

---

. . . the reproduced record . . . shall be numbered separately in Arabic figures[,] . . . thus 1, 2, 3, etc., followed . . . by a small a, thus 1a, 2a, 3a, etc."). For simplicity's sake, however, we will nevertheless cite to Apex's Reproduced Record by using the page numbers provided by Apex.

[2] City of Philadelphia, Pa., Zoning Code (2012).

[3] Apex does not dispute that the properties are within the City's Steep Slope Protection Area.

survey confirming the locations of slopes of 15% or greater.

(b) Restrictions on Disturbance.

(.1) On those portions of the lot where the slope of the land is more than 15% and less than 25%, site clearing or earth moving activities shall be permitted only in conformance with an earth moving plan described in § 14-704(2)(c) below. No earth moving plan shall be required if (a) the lot contains no more than one-half acre of gross land area, or (b) the proposed earth moving will affect 500 sq. ft. of land or less and the proposed activity will increase impervious surface on the lot by no more than 500 sq. ft.

(.2) On those portions of the lot where the slope of land is 25% or greater, no site clearing or earth moving activity is permitted.

(c) Earth Moving Plans.

Where an earth moving plan is required pursuant to § 14-704(2)(b) above, that plan must be prepared by a licensed professional engineer, in accordance with regulations approved by the Commission and must set forth the measures by which erosion and sedimentation are to be controlled during the earth moving and construction process. Such plans shall be filed with and approved by the Commission before L&I may issue a zoning permit. A professionally-sealed earth moving plan must be maintained on site for the duration of earth moving and construction, and must be available for inspection by the City during normal business hours.

Former Code § 14-704.[4]

---

[4] Section 14-704 was amended through two separate ordinances after the Board considered this matter. These ordinances went into effect on, respectively, October 14, 2020, and March 18, 2021. *See* Code § 14-704; City of Philadelphia, Bill No. 200160, *available at* http://www.amlegal.com/pdffiles/Philadelphia/200160.pdf; City of Philadelphia, Bill No. 210075, *available at* http://www.amlegal.com/pdffiles/Philadelphia/210075.pdf (last visited May 17, 2022).

On February 21, 2019, Apex filed an appeal with the Board, through which it requested a variance from the Steep Slope Ordinance. R.R. at 18-19.[5] The Board then held a public hearing regarding Apex's appeal on May 22, 2019, at which a number of local residents and representatives of both the Ridge Park Civic Association[6] and the Commission expressed their opposition to Apex's variance request. Decision, F.F. ¶¶12-15, 17-18, 20.[7] Of particular import to this appeal, multiple objectors argued that Apex was not entitled to a variance because it had not submitted an earth moving plan. Additionally, the geotechnical report Apex had provided to the Board was out-of-date and did not accurately reflect the currently proposed location for the single-family home. *Id.* at ¶¶12, 14; *see* Board Hearing Tr., 5/22/19, at 7-8, 15-16. As for Apex, its managing member maintained that the combined lots could not be developed without disturbing the lots' slopes in a manner that violated the Code. *See* Board Hearing Tr., 5/22/19, at 4-7 (Apex's managing member adopting statements made by Apex's attorney as his own). Apex also presented testimony from its project architect, who spoke about how Apex's development plans had changed since the company had purchased the properties in 2012 and discussed Apex's efforts to limit the project's impact upon the properties' steep slopes. *Id.* at 17-21, 23-24.

At the close of the hearing, the Board unanimously voted to deny Apex's variance request. *Id.* at 25. That same day, the Board issued its Decision, in which it

---

[5] Apex filed "revised proviso plans" with the Board on May 22, 2019, which, according to Apex, obviated its need for relief from the Code's setback standards. *See* R.R. at 13-15.

[6] Ridge Park Civic Association is "a Registered Community Organization . . . for [an] area [of the City that includes both 6558 Lawnton Street and 6560 Lawnton Street.]" Decision, F.F. ¶ 5.

[7] Councilman Curtis Jones, Jr., whose district contains both of the aforementioned properties, also submitted letters in opposition to Apex's variance request. Decision, F.F. ¶ 19.

4

explained that its denial was based upon its conclusion that Apex had not satisfied the Code's general criteria for granting variances, as well as those specific to use variances, and was also due to Apex's failure "to provide relevant, up-to-date geotechnical and environmental reports as required." Decision, Conclusions of Law (C.L.). ¶¶6-10. Apex appealed the Board's Decision to Common Pleas, which took no additional evidence and affirmed the Board in full on September 30, 2020. This appeal by Apex to our Court followed shortly thereafter.

## II. Discussion

Apex argues, in essence, that the Board erroneously denied Apex's variance request for two reasons. First, Apex claims the Code did not require it to get the Commission's approval of an earth moving plan for the properties as a prerequisite for obtaining variance relief. Apex's Br. at 13-16. Second, Apex maintains that it satisfied the Code's requirements for securing its desired variance. *Id.* at 9-13, 16-17.

However, we cannot address the merits of Apex's arguments at this stage, on account of the substantive deficiencies of the Board's Decision. In this instance, the Board did not explain in its decision how or why it came to the conclusion that Apex had failed to satisfy its burden of proof. Instead, the Board merely summarized the facts, stated the legal standard for determining whether a variance application should be approved, and then flatly concluded that Apex had not satisfied that standard. See Decision, F.F. ¶¶1-20, C.L. ¶¶1-10. There is thus no way for us to clearly discern the reasoning underpinning the Board's conclusions. Furthermore, it appears that the Board improperly reviewed Apex's steep slope application using the Zoning Code's standards for use variances. See *id.*, C.L. ¶7 (citing Code § 14-303(8)(e)(.1)(a), (8)(e)(.2)). The Board did so, even

5

though Apex sought a steep slope variance, which is neither a dimensional variance nor a use variance, but is nevertheless considered to have a less stringent hardship requirement than use variances. *Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260, 1267 (Pa. Cmwlth. 2011); *Zappala Grp., Inc. v. Zoning Hearing Bd. of the Town of McCandless*, 810 A.2d 708, 711 (Pa. Cmwlth. 2002). Given all of this, we conclude that the Board failed to provide adequate "findings and . . . reasons for [its] adjudication," 2 Pa. C.S. § 555, and did not "explain its decision in sufficient detail to permit meaningful appellate review." *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1389 (Pa. 1985).

### III. Conclusion

Accordingly, we vacate Common Pleas' order and remand this matter to the lower court. On remand, Common Pleas shall vacate the Board's decision and then further remand this matter to the Board with instructions that it issue a new, legally sufficient adjudication, through which it must properly articulate its reasons for denying Apex's variance application. *See Troiani Grp. v. City of Pittsburgh Bd. of Appeals*, 260 A.3d 1006, 1014-15 (Pa. Cmwlth. 2021).

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Apex Properties : 
Unlimited from the decision of : 
Zoning Board of Adjustment : No. 1164 C.D. 2020
 : 
Appeal of: Apex Properties Unlimited : 

# **O R D E R**

AND NOW, this 18th day of May, 2022, the Court of Common Pleas of Philadelphia County's (Common Pleas) September 30, 2020 order is VACATED and this matter is REMANDED to Common Pleas for disposition consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge