IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:  Appeal of Merion Ridge, LLC  :
from the Decision dated  :
March 31, 2022, of the Zoning  :
Hearing Board of West  :
Conshohocken  :
  :  No. 1567 C.D. 2023
Appeal of:  Merion Ridge, LLC  :  Argued:  November 7, 2024


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
 HONORABLE LORI A. DUMAS, Judge
 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER  FILED:  December 9, 2024

Merion Ridge, LLC (Merion Ridge) appeals from an Order of the Court of Common Pleas of Montgomery County (common pleas), which affirmed a decision by the Zoning Hearing Board of West Conshohocken Borough (Board) denying Merion Ridge's requests for multiple variances involving steep slopes and cluster development.  On appeal, Merion Ridge argues it met its burden of establishing an entitlement to the zoning relief and the Board made numerous errors of law and findings of fact unsupported by the record when it denied that relief.  Upon careful review, we affirm.

I.  **BACKGROUND**

 A.  *The Property and Proposed Plan*

Merion Ridge owns a 5.5-acre vacant parcel of land along Valley Road, straddling West Conshohocken Borough (Borough) and Lower Merion Township

(Township) in Montgomery County. (Board's Remand Decision, Findings of Fact (Remand FOF) ¶¶ 1, 3-4.)[1] At issue in this appeal is the 4.75-acre portion of property located within the Borough (Property), on which Merion Ridge proposed to develop four single-family dwellings in a cluster configuration, which would be rented.[2] (Board's Remand Decision at 1; Remand FOF ¶ 8.) A significant amount of the Property has "moderate steep slopes" of 15 to 25% and "severe steep slopes" of 25% or greater, but some is not impacted by steep slopes.[3] (*Id.* ¶¶ 5, 14; *see also* Ex. A-10, Reproduced Record (R.R.) at 72a (depicting the Property's slopes).) It is also heavily wooded. (*Id.* ¶ 11.)

The Property is in the R-1 Residential District (R-1 District), which permits one single-family dwelling per 10,000 square feet. (Remand FOF ¶ 3; BOROUGH OF W. CONSHOHOCKEN, MONTGOMERY CNTY., PA., ZONING ORDINANCE (1976) (Zoning Ordinance), *as amended*, § 113-36.A.) The Zoning Ordinance also permits a single-family detached cluster development as a conditional use in the R-1 District. (Zoning Ordinance § 113-183.) Such cluster developments require a minimum tract size of 15 contiguous acres, adequate road access, and public water and sewer, and should comply with the legislative intent of the Single-Family Detached Cluster

---

[1] By order dated December 21, 2022, common pleas remanded the matter for the Board to issue additional findings of fact and conclusions of law. Remand Findings of Fact refer to those issued in accordance with that order.

[2] Merion Ridge's application originally proposed a cluster of five single-family detached dwellings. (Reproduced Record (R.R.) at 4a.) That number was later reduced to four. (*Id.* at 57a.) The four-unit clustered plan was further revised to the most recent version, a copy of which is included in the record as part of Exhibit A-18, which can be found in the Reproduced Record at 89a.

[3] Although the Zoning Ordinance does not use the terms "moderate" or "severe" to define the categories of steep slopes, it does differentiate between slopes of 15% but less than 25% and slopes of more than 25%. (Zoning Ordinance § 113-71.B.1.)

Overlay District[4] and further the general welfare and public interest of the Borough. (*Id.*) In addition, the maximum density per gross acre is four units. (*Id.* § 113-185.A.1.)

However, the Zoning Ordinance prohibits, relevant here, any structures, roads, driveways, parking areas, construction, or other development on steep slopes of 25% or more. (*Id.* § 113-75.B.) The Zoning Ordinance further provides:

> No building lot shall be created unless it contains sufficient buildable area with slopes less than 25%. If it is infeasible to provide this buildable area in accordance with the setbacks required by the underlying district, the lot area shall be increased as necessary to provide a buildable area equal to at least 1/2 the building envelope provided by the minimum lot dimensional standards of the underlying district.

(*Id.* § 113-78.C.)

Thus, to develop the Property as planned, Merion Ridge filed an application, requesting the following four variances:

> 1. A variance from Section 113.75.B of the Zoning Ordinance, so as to permit structures, roads, driveways, parking areas, construction, or other development on steep slopes of 25% or more.

---

[4] Section 113-182 of the Zoning Ordinance, entitled "Declaration of legislative intent," identifies the following intent:

> A. To provide performance standards and density controls to ensure that single-family detached cluster developments will be compatible with the character and density of existing adjacent land uses as well as planned uses and densities shown in the Borough's Comprehensive Plan.
>
> B. To preserve sensitive natural features such as floodplains, woodlands and steep slopes.
>
> C. To provide greater design flexibility and a more efficient development pattern through shorter roads and utility lines.

(Zoning Ordinance § 113-182.)

2.     A variance from Section 113.78.C of the Zoning Ordinance, so as to create four (4) building lots without sufficient buildable area of steep slopes less than 25%.

3.     A variance from Section 113.183.A of the Zoning Ordinance, so as to permit a cluster development on a tract measure less than fifteen (15) acres.

4.     A variance from Section 113.183.C of the Zoning Ordinance, so as to permit a cluster development on a tract without connection to public sewer.

(Board's Remand Decision at 1-2; *see also* R.R. at 57a-58a.)

## B.     Hearing before the Board

A hearing on Merion Ridge's application was scheduled for March 22, 2022, at which Merion Ridge, the Borough, and Virginia Lowe, a Township resident (Intervenor),[5] appeared with counsel.  Jeremy Wood, Merion Ridge's principal (Principal), Jonathan Ceci, a landscape architect (Landscape Architect), and Robert Lambert, a civil engineer (Merion Ridge's Engineer), testified on behalf of Merion Ridge, and Khaled Hassan, a civil engineer (Borough's Engineer), testified on behalf of the Borough.

Merion Ridge's Principal testified as follows.  Merion Ridge has owned the Property for 14 years when he purchased it and the property in the Township for $375,000. (R.R. at 105a, 112a.)  It was part of a larger tract on which a larger, higher density development was planned in 1948, but after a taking for construction of the intersection of the Blue Route and Schuylkill Expressway by the Pennsylvania Department of Transportation (PennDOT), the Property is now smaller and irregularly shaped.  (*Id.* at 106a-08a.)  On cross-examination, Principal testified he

_____

[5] Intervenor indicated her property is directly across the street from the Property.  (R.R. at 210a.)

4

did not foresee the steep slopes of the Property as "a major problem" when he purchased it. (*Id.* at 111a.) When pressed about whether constructing more houses would yield more profit, Principal replied he had "a number of motivations. Money [wa]s one of them. Yes." (*Id.* at 119a.)

Landscape Architect testified as an expert in landscape architecture as follows. Access to the Property is through the Township, and "a good amount" of the Property is woodland, "which is one of the motivations for preserving through the clusters." (*Id.* at 121a.) There is also a stream "down the middle" of the Property. (*Id.* at 123a.) Landscape Architect prepared a topographic map of the Property, illustrating the different slopes.[6] (*Id.*) These features, Landscape Architect opined, created a hardship to developing the Property. (*Id.*) Landscape Architect worked with an engineer to develop different plans for the Property, from traditional to clustered development, which he described. (*Id.* at 123a-28a.) Landscape Architect also described how clustered plans limited the amount of disturbance to the steep slopes compared to traditional plans and also preserved the woodlands. (*Id.* at 124a-25a, 129a.) Based on feedback from Borough officials, Merion Ridge developed the present plan comprised of four single-family dwellings in a cluster configuration. (*Id.* at 128a.)

Landscape Architect explained that, in his professional opinion, a variance from the 15-acre minimum lot size for a cluster development was appropriate "[b]ecause we think that it's the best means of developing the [P]roperty to the density that seems reasonable given its size, and yet without impacting the steep slopes . . . or minimizing the impact of steep slopes." (*Id.* at 130a-31a.) Landscape Architect opined the Property's other physical conditions were also compatible with

---

[6] The topographic map is Exhibit A-10 and may be found in the Reproduced Record at 72a.

a cluster development. (*Id.* at 131a.) Moreover, it promoted the purpose of cluster developments per the Zoning Ordinance by protecting the Property's natural features, which was "one of the most important motivations for it." (*Id.*)

Landscape Architect further opined that it was impossible to develop the Property in compliance with the Zoning Ordinance without a variance from the steep slopes provision. (*Id.* at 132a.) However, the proposed plan would minimize disturbance to the steep slopes by "mov[ing] the units as close together as possible," "shift[ing] the anchor for th[e] cul-de-sac" to the edge of a cluster of moderate slopes, and "limit[ing] any kind of crossing of the stream." (*Id.* at 133a.) Although there were flatter portions of the Property, they were located near the narrow Township tract or the stream, which Merion Ridge sought to protect. (*Id.* at 134a.) In addition, according to Landscape Architect, development on these areas would still require variance relief, would disturb a larger portion of the steep slopes due to the need to provide access drives, and would increase the amount of impervious surface due to more road infrastructure, which would, in turn, cause erosion and sedimentation.[7] (*Id.* at 134a-36a.) Landscape Architect estimated this type of plan would disturb 3.6 acres overall, 2 of which would be to slopes areas of 25% or more. (*Id.* at 135a.)

On cross-examination, Landscape Architect admitted one unit could be constructed on the Property, but denied one unit would disturb less of the steep slopes than four units. (*Id.* at 137a-39a.) Landscape Architect further testified one unit would be different than the four "very modestly scaled units," resulting in "a different kind of market." (*Id.* at 140a.) When asked why Merion Ridge could not "build just the two houses . . . and then have [] less disturbance of the steep slope,"

---

[7] The plan depicting this development is Exhibit A-14, which can be found in the Reproduced Record at 76a.

Landscape Architect responded, "[o]bviously, financial." (*Id.* at 141a.) Landscape Architect later elaborated that in addition to financial reasons, another reason is two units would not create a "hamlet of homes," "the same sense of community," or the "esthetic and [] relational aspect," which was Principal's motivation. (*Id.* at 142a.) Regardless of the number of units constructed, Landscape Architect reiterated that a variance would still be needed. (*Id.* at 143a.) Because a two-unit plan was not studied, Landscape Architect could not opine whether it would require the same amount of disturbance to the steep slopes. (*Id.*)

Merion Ridge's Engineer, who was offered as an expert in civil engineering and land development, testified as follows. In his professional opinion, a clustered development was appropriate for this Property, despite it not meeting the minimum lot size requirement, because of its slopes and configuration. (*Id.* at 153a.) Merion Ridge's Engineer also testified that because there was more than one acre of land per unit, there was ample space for on-site septic in lieu of public sewer. (*Id.*) He explained that public sewer is usually required for larger cluster developments because they are denser, having approximately four units per acre. (*Id.*) Properly designed and permitted on-lot systems would not be detrimental to the neighboring properties or public health, safety, and welfare, in his opinion. (*Id.* at 154a.)

Merion Ridge's Engineer also agreed with Landscape Architect that it is impossible to use the Property for a residential use without variance relief from the steep slope provisions. (*Id.* at 155a.) He opined that, "with proper engineering and geotechnical studies[, the Property] can be developed in a safe manner," explaining there are many areas in the Borough that have been safely developed on steep slopes. (*Id.*) According to Merion Ridge's Engineer, the configuration, steep slopes, and stream are unique features of the Property that create a hardship. (*Id.* at 156a.)

In his view, the proposed plan would not alter the essential character of the neighborhood. (*Id.*) He explained that, but for the Property's physical characteristics, 22 to 23 single-family detached dwellings could otherwise be constructed on the Property, depending on the configuration (traditional versus clustered); therefore, the proposed density of 4 homes is 5 times less. (*Id.* at 157a-58a.) Merion Ridge's Engineer also described an adjoining 23-acre, 92-unit development called Merion Hill, which "was developed in a safe and efficient manner." (*Id.* at 158a-60a, 186a.) Merion Ridge's Engineer did not know the amount of steep slopes on the Merion Hill development or what the Zoning Ordinance required at the time it was constructed in the 1990s. (*Id.* at 182a-83a.)

Merion Ridge's Engineer further testified that the amount of slope disturbance is not directly related to the number of planned units, explaining infrastructure, such as access, plays a role. (*Id.* at 161a.) He also opined that if fewer homes were constructed, their respective size would increase in order to be consistent with similar properties in the area. (*Id.* at 161a, 186a.) As an example, Merion Ridge's Engineer stated that if it was one unit, that unit would be a larger home with amenities, such as a pool and parking area. (*Id.* at 162a.) He also explained how disturbance of the steep slopes differed between the various plans Merion Ridge considered, with the one-unit and four-unit plans being largely equivalent in terms of disturbance. (*Id.* at 162a-64a.) On cross-examination, Merion Ridge's Engineer explained that if three of the four units were eliminated, leaving just one unit to be constructed on the moderate slope area, the amount of disturbance to the steep slopes would not reduce substantially, just by the footprint of the two units that would have been located in the steep slopes.[8] (*Id.* at 166a-67a.)

---

[8] The third eliminated unit would have been on moderate slopes.

8

Merion Ridge's Engineer also described the retaining walls that would be constructed ranging from 5 to 10 feet tall. (*Id.* at 167a-68a.) He explained that retaining walls can reduce the amount of disturbance needed and reduce erosion. (*Id.* at 186a-87a.) He acknowledged the Property had not been tested for private sewer systems and that the adjoining development, Merion Hill, has public sewer. (*Id.* at 168a.)

Borough's Engineer, who was qualified as an expert in civil engineering, land development, and planning and zoning, testified as follows. In Borough Engineer's professional opinion, the minimum relief necessary to provide reasonable use of the Property would be one unit. (*Id.* at 188a.) Borough Engineer considered steep slopes to be a "very touchy subject." (*Id.*) While "nothing is impossible," he explained "[t]here is a cost to everything," and with steep slopes exceeding 25%, there is a risk of "lack of stabilization and vegetation, which in turn turns into severe runoff, erosion[,] and then in some cases as some of us may know, it also is an issue of a landslide." (*Id.* at 189a.) He further testified about the safety concerns with retaining walls and concerns with adequate access for emergency personnel. (*Id.* at 190a-91a.) Borough's Engineer testified public sewer could be introduced to the Property. (*Id.* at 189a.) He did not think it was "a good idea" to compare properties to one another because of their unique characteristics and explained some of the problems that arose during the development of other properties on steep slopes. (*Id.* at 191a-92a.)

On cross-examination, Borough's Engineer acknowledged that the concerns he expressed about developing on steep slopes can be addressed during the land development stage. (*Id.* at 194a-95a.) He further acknowledged during his 20-plus

years of experience as the engineer for the Borough that relief from the steep slope provisions has been both granted and denied in other projects. (*Id.* at 195a.)

During public comment, one Borough resident and three Township residents, including Intervenor, testified they opposed the variances, without elaboration. (*Id.* at 197a, 201a-02a.) Another Township resident who opposes the project and whose property abuts the access road to the Property expressed concern over the damage allegedly caused to their property by erosion. (*Id.* at 198a-99a.) Another community member stated a lot of the Borough is constructed on steep slopes and suggested a geotechnical engineer be consulted. (*Id.* at 200a-01a.) That person also stated if homes were built there, it would generate tax revenue for the Borough. (*Id.* at 201a.)

## C. Board's Decisions

Following the hearing and public discussion, the Board unanimously voted to deny the variance requests. The Board subsequently issued a written decision containing 13 findings of fact and 4 conclusions of law (Board's Original Decision).[9] Merion Ridge appealed to common pleas, which remanded the matter for the Board to provide more detailed findings of fact and conclusions of law. (*See* 12/21/22 Common Pleas' Order, R.R. at 339a.)[10]

---

[9] The findings of fact in the Board's Original Decision outline the Property's location, the variances requested, and the procedural history of the zoning application. The conclusions of law in the Board's Original Decision merely state the criteria in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202, are not met, the decision is supported by substantial evidence, the Board carefully reviewed the evidence and did not abuse its discretion, and the decision is consistent with the MPC and case law interpreting same.

[10] In its order, common pleas explained the Board's Original Decision did not identify the evidentiary support for its findings, putting common pleas "in a precarious position, in that it would have to base its decision on assumptions and educated[ ]guesses as to what was going on in the mind of the Board." (12/21/22 Common Pleas' Order at 1 n.1, R.R. at 339a.)

10

Upon remand, the Board made the following additional findings of fact. Merion Ridge's Principal acknowledged the Property could be developed in a number of ways. (Remand FOF ¶ 7.) Merion Ridge believed the cluster development was "the best means of developing the [P]roperty to the density that seems reasonable." (*Id.* ¶ 13.) The Board found Exhibit A-14[11] showed the "Property would allow for houses to be primarily developed in areas out of the 25% or more steep slopes, with traditional lotting, but there would still be significant disturbance of the severe steep slope areas." (*Id.* ¶ 15.) Given the Property has areas with less steep slopes, the Board found Merion Ridge could construct one house of the same size as one of the proposed cluster houses, which one of Merion Ridge's witnesses acknowledged would result in less disturbance to the steep slopes. (*Id.* ¶ 16.) The Board further found Merion Ridge "admitted that financial considerations entered into developing the four-house project versus a one-house project." (*Id.* ¶ 17.)

The Board concluded Merion Ridge did not meet its burden of establishing the first criterion for variance relief under Section 910.2 of the Pennsylvania Muncipalities Planning Code (MPC),[12] as there were no unique physical circumstances or conditions peculiar to the Property. (*Id.* ¶ 20(A).)[13] The Board rejected Merion Ridge's argument that because it would still need variance relief from the steep slope requirement even if only one house was constructed, Merion

---

[11] A copy of this exhibit is available in the Reproduced Record at 76a.

[12] Section 910.2 was added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

[13] The Board made virtually identical findings of fact and conclusions of law as to most of the criteria. Some are more appropriately considered a factual finding, whereas others are more legal conclusions based on those facts. For simplicity, we cite to only the findings of fact in the Remand Decision but will note the corresponding conclusion of law to each criterion. The first criterion is also addressed in Conclusion of Law (COL) 6.

Ridge was entitled to the specific relief it sought, stating, "[t]aking that argument to its logical conclusion, [Merion Ridge]'s position amounts to a conclusion that just because [Merion Ridge] would need the minimum relief to build one [] house, then it should be entitled to do whatever it wanted on the Property[, which] is not the law." (*Id.* ¶ 20(B)-(C).)  The Board also rejected Merion Ridge's contention that the steep slopes created the unique physical condition resulting in hardship, stating "this argument ignores the provision of the [MPC] where a hardship cannot be based on what the ordinance imposes as a restriction."  (*Id.* ¶ 20(D); *see also id.* ¶ 20(H).)  Moreover, even if the steep slopes could provide the basis for a finding of hardship, the Board reasoned that Merion Ridge's Engineer acknowledged that "one can build in steep slope areas from an engineering standpoint, with retaining walls."  (*Id.* ¶ 20(G).)  The Board also concluded that the unusual shape of the Property did not create a hardship.  (*Id.* ¶ 20(F).)

Concerning the request for a variance from the cluster development provisions, the Board found the Property was just one-third of the size required for cluster developments and the Property being smaller than what is required is not a physical condition causing the hardship.  (*Id.* ¶ 20(J)-(K).)  Similar to the steep slopes variance request, the Board concluded it was the requirements of the Zoning Ordinance that was creating any hardship.  (*Id.* ¶ 20(K).)  The Board further found that "because [Merion Ridge] presented evidence that traditional lot layouts were possible . . . for the same number of houses (or more)," Merion Ridge was seeking to save on infrastructure costs to maximize profit, not respect the steep slopes, or it would have only proposed one house.  (*Id.* ¶ 20(L)-(M).)

The Board also determined Merion Ridge did not satisfy the second variance criterion by showing the proposed plan was a reasonable use of the Property because

12

"[i]t [wa]s clear from the record that the Property c[ould] be developed in stricter conformity with the provisions of the Zoning Ordinance." (*Id.* ¶ 21(A).)[14] Specifically, the Board noted Merion Ridge conceded one house could be built on the lot, which the Board concluded was a reasonable use of the Property. (*Id.* ¶ 21(B)-(C).) It specifically did not credit Merion Ridge's argument that constructing one house would result in more disturbance of the steep slopes than four houses, crediting Borough's Engineer over Merion Ridge's expert witnesses. (*Id.* ¶ 21(D)-(E).) The Board further explained that constructing one house may still require zoning relief from the steep slope requirements, but "the variances to the extent requested are clearly not required to enable the reasonable use of the Property." (*Id.* ¶ 21(I).) To the extent Merion Ridge contended that because of the large size of the Property, building just one house could be justified only by building a very large house, the Board concluded "this assertion belies common knowledge that there are houses on five-acre lots all over Montgomery County." (*Id.* ¶ 21(F).) Instead, the Board found Merion Ridge's "underlying motivation is the obviously greater profit margin of a four[-]house development versus a one[-]house development, and [Merion Ridge] presented absolutely no evidence that it was financially infeasible to just build one [] house on the Property and still make a profit." (*Id.* ¶ 21(G).) The Board concluded this conclusion was bolstered by Principal, who admitted money was a motivating factor in proposing four houses. (*Id.* ¶ 21(H).)

The Board likewise determined the third criterion for a variance was not satisfied, concluding any hardship that existed was self-created by Merion Ridge seeking to "overdevelop" the Property by building more than one house, which

---

[14] *See also* Board's Remand Decision, COL ¶ 7 (addressing the second criterion).

13

would require less relief from the steep slope requirement, and "by proposing a cluster development on a tract of land that simply does not qualify for such a development." (*Id.* ¶ 22(A)-(B).)[15]

The Board further determined that the variance would alter the essential character of the neighborhood or zoning district, would substantially impair the appropriate use or development of adjacent property, and would be detrimental to public welfare, the fourth criterion for a variance. In particular, it found Borough's Engineer "presented credible and convincing expert testimony as to why protecting severe steep slopes is important with respect to the use and development of adjacent properties." (*Id.* ¶ 23(A).)[16] The Board found risks included "lack of stabilization, severe runoff, erosion, and landslides," and that retaining walls can similarly create dangerous conditions. (*Id.* ¶ 23(B).)

The Board also concluded, in relation to the fifth criterion, that Merion Ridge did not show the requested variance was the minimum required to afford Merion Ridge relief and represented the least modification possible. (*Id.* ¶ 24(M).)[17] Again, the Board found construction of one house would be the minimum relief and least modification needed. (*Id.* ¶ 24(B), (L).) The Board explained how Merion Ridge repeatedly modified its plan, reducing the number of houses each time, thereby leading the Board "to conclude that proposing more than one [] house on this Property would not represent the minimum relief possible" and that "[b]ecoming incrementally closer to the minimum relief is not the minimum relief." (*Id.* ¶ 24(C)-(D).) The Board was not persuaded by Merion Ridge's argument that if it

---

[15] *See also* Board's Remand Decision, COL ¶ 8 (addressing the third criterion).

[16] *See also* Board's Remand Decision, COL ¶ 9 (addressing the fourth criterion).

[17] *See also* Board's Remand Decision, COL ¶ 10 (addressing the fifth criterion). The Board only made conclusions as to paragraphs (A) through (E), although its findings included paragraphs (A) through (J).

14

constructed only one house, it would have to be a mansion, complete with amenities, accessory structures, and large parking, noting "there was no market analysis presented." (*Id.* ¶ 24(E).) The Board stated that "the entire parcel measures 5.5 acres, of which 3.75 acres have steep slopes of 25% or more, and [Merion Ridge] proposes to disturb 26,653 [square feet] – a little more than [0].6 acre – more than one half [] of an acre – over 16% of the severely steep sloped areas." (*Id.* ¶ 24(F).) Of the total acreage of the Property in the Borough, the Board found Merion Ridge proposed disturbing approximately 18,400 square feet of the severely steep sloped area if it built four houses and 22,300 square feet if it built just one. (*Id.* ¶ 24(G)-(H).) Based on the credited testimony of the Borough's Engineer, though, the Board found less disturbance would occur if one house of a similar size to one of the four houses proposed was constructed. (*Id.* ¶ 24(I).) The Board also found there was no testimony that the soils on the Property could support an on-lot sewer system. (*Id.* ¶ 24(J).) However, there was testimony from Merion Ridge's witnesses and the Borough's witness that public sewer would be or was already available. (*Id.*)

In addition to the variance criteria in the MPC, the Board examined the criteria set forth in Section 113-120 of the Zoning Ordinance[18] and concluded the proposed plan (A) is inconsistent with the spirit, purpose, or intent of the Zoning Ordinance; (B) will substantially injure or detract from use of the adjacent property; (C) will not serve the Borough's best interest; (D) may not unduly burden some public services, but there was a lack of evidence about providing emergency services access to the Property; (E) would not harmfully affect traffic; (F) does not comply with sound standards of subdivision and land development practice; and (H) would not impact

---

[18] Section 113-120 of the Zoning Ordinance sets forth 12 considerations, not including subparts, that the Board is required to consider for variance and/or special exception relief.

15

parking demand.  (*Id.* ¶ 25(A)-(F), (H).)[19]  The Board also found that there were no conditions that could be imposed to provide relief.  (*Id.* ¶ 25(G).)  Thus, the Board concluded Merion Ridge did not satisfy its burden.  (*Id.* ¶ 25(I).)

### D.     Common Pleas' Decision

Following the Board's issuance of its Remand Decision, common pleas, accepting briefs and oral argument but taking no additional evidence, affirmed the Board's denial of the variance requests.[20]  In doing so, it concluded the record supported the Board's findings that any hardship was self-created by Merion Ridge and its proposed plan, which would "overdevelop" the Property with money as the motivation.  (Common Pleas' Memorandum at 7.)  Thus, common pleas determined the Board did not err or abuse its discretion in concluding Merion Ridge did not meet its burden of establishing an entitlement to variance relief from the steep slope requirements.  (*Id.*)

Common pleas similarly held the Board did not err or abuse its discretion in denying the requests for variance relief related to the cluster development, stating "the Board determined that (1) the [P]roperty was not suitable for the proposed use, (2) the Zoning Ordinance does not contemplate such cluster developments on a five-acre tract of land, and (3) the proposed use is inconsistent with the spirit, purpose, and intent of the Zoning Ordinance," and that the variances would substantially injure the adjacent properties' use, cause significant disturbances to the steep slopes

---

[19] *See also* Board's Remand Decision, COL ¶ 11 (addressing the criteria from the Zoning Ordinance).  The Board's findings differed from its conclusions as to these criteria in that there were no corresponding paragraphs (H) or (I) in the conclusions.

[20] Merion Ridge filed a separate appeal from the Board's Remand Decision, (R.R. at 367a-431a), and subsequently filed an uncontested motion to consolidate the two appeals, (*id.* at 432a-40a), which common pleas granted on May 8, 2023, (*id.* at 494a).

resulting in safety concerns, and would not be in the Borough's best interest, all of which were supported by substantial evidence. (*Id.* at 8.)

Merion Ridge then filed a timely Notice of Appeal to this Court.[21] On appeal, Merion Ridge raises six issues: (1) the Board did not properly consider the unique physical circumstances of the Property; (2) the Board erred in determining that construction of one house on a 4.7-acre parcel was a reasonable use; (3) the Board wrongly determined the hardship was self-created; (4) certain findings of fact are not supported by substantial evidence; (5) the Board erred in concluding the variance request was not the minimum needed to afford relief; and (6) the Board erred in determining Merion Ridge did not satisfy the criteria in the Zoning Ordinance.

## II.    DISCUSSION

### A.    *General Legal Principles*

Where common pleas does not take additional evidence, such as here, our review of a land use appeal "is limited to determining whether the zoning hearing board committed an error of law or abused its discretion." *EDF Renewable Energy v. Foster Twp. Zoning Hearing Bd.*, 150 A.3d 538, 544 n.4 (Pa. Cmwlth. 2016). An abuse of discretion occurs when a zoning hearing board's findings of fact are not supported by substantial evidence, which is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* The zoning hearing board is the sole judge of witness credibility and evidentiary weight, and we "may not substitute [our] interpretation of the evidence for that of the [zoning

---

[21] Pursuant to Pennsylvania Rule of Appellate Procedure 1925, Pa.R.A.P. 1925, common pleas directed Merion Ridge to file a statement of errors complained of on appeal, which Merion Ridge did, and issued an opinion directing the Court to common pleas' prior Memorandum for the rationale behind its decision. (*See* R.R. at 558a-73a.)

17

hearing board].” *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015). Moreover, we must view the evidence presented in the light most favorable to the party that prevailed before the fact finder, including by giving that party the benefit of all reasonable inferences arising therefrom. *Id.*

Section 910.2(a) of the MPC governs a zoning hearing board's authority to grant a variance and provides:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

18

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).

At issue in this matter are denials of variances from certain dimensional requirements and steep slope requirements in the Zoning Ordinance. A dimensional variance seeks "a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). Requests for variances from steep slope regulations are often considered a "hybrid" request falling into a "grey area" because they fit neither as dimensional variances nor use variances.[22] *Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260, 1267 (Pa. Cmwlth. 2011) (quoting *Zappala Grp., Inc. v. Zoning Hearing Bd. of the Town of McCandless*, 810 A.2d 708, 711 (Pa. Cmwlth. 2002)).

Both dimensional variances and steep slope/hybrid variances are evaluated using the relaxed standard enunciated by our Supreme Court in *Hertzberg*. *Pohlig Builders*, 25 A.3d at 1269. In *Hertzberg*, the Supreme Court recognized the differences between dimensional and use variances, explaining "the grant of a dimensional variance is of lesser moment than the grant of a use variance," and, therefore, "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." 721 A.2d at 47-48. The Supreme Court set forth various factors to consider in determining whether an unnecessary hardship has been established, such as "the economic detriment to the applicant if the variance was denied, the financial

---

[22] "[A] use variance involves a proposal 'to use property in a manner that is wholly outside zoning regulations.'" *Soland v. Zoning Hearing Bd. of E. Bradford Twp.*, 311 A.3d 1208, 1213 (Pa. Cmwlth. 2024) (quoting *Hertzberg*, 721 A.2d at 47).

19

hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id*. at 48, 50. As stated, we approved of the use of this relaxed standard in the hybrid scenario seeking variance relief from steep slope provisions of zoning ordinances. *See Pohlig Builders*, 25 A.3d at 1269.

Notwithstanding the relaxed *Hertzberg* standard, "[a]n applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tidd*, 118 A.3d at 8. Furthermore, the applicant's burden is a "heavy one, and the reasons for granting the variance must be substantial, serious[,] and compelling." *Pequea Township v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 507 (Pa. Cmwlth. 2018) (internal quotation marks and citation omitted). Moreover, "[w]here no hardship is shown, or where the asserted hardship amounts merely to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied, even under the relaxed standard." *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 474 (Pa. Cmwlth. 2021).

With these principles in mind, we turn to the issues raised by Merion Ridge.

### B. Whether the unique physical circumstances and conditions of the Property create an unnecessary hardship

#### 1. Parties' Arguments

Merion Ridge argues the Board erred in refusing to consider the Property's unique physical characteristics, including its steep slopes, when determining whether an unnecessary hardship existed. Notwithstanding that the Zoning Ordinance prohibits steep slope disturbance, Merion Ridge points out that Section 910.2(a)(1) of the MPC specifically allows for consideration of "topographical or

20

other physical conditions peculiar to the particular property." 53 P.S. § 10910.2(a)(1). Merion Ridge asserts it is undisputed that the Property has steep slopes, which are "uniquely problematic" because of "their quantity and location," making access to flatter portions of the Property "impossible without first traversing (and thereby disturbing) these steep slopes." (Merion Ridge's Brief (Br.) at 24.) Merion Ridge argues an applicant would never be able to obtain variance relief from an ordinance provision prohibiting disturbances to physical conditions under the Board's interpretation. It points out the Court has recognized steep slope variances in the past, and the Borough has even granted such relief. It maintains Merion Ridge's Engineer did not testify that because retaining walls could be used, no hardship exists; Merion Ridge contends, instead, that the point of the testimony was to establish steep slopes could be safely developed.

In addition to ignoring evidence of the sleep slopes, Merion Ridge contends the Board capriciously disregarded evidence of other physical conditions of the Property, which demonstrate an unnecessary hardship. First, Merion Ridge claims the Board erroneously concluded the irregular shape of the lot did not contribute to any unnecessary hardship. Merion Ridge explained that the condemnation by PennDOT caused the irregular shape and resulted in only one access point through the sloped area. Second, Merion Ridge argues the extensive woodlands and stream bisecting the Property contribute to the unnecessary hardship.

As for the variance related to the cluster development, Merion Ridge argues the record is devoid of evidence to support the Board's finding that the purpose of requesting this variance was to save on infrastructure costs and maximize profit. Rather, it contends the record shows its purpose was to reduce the disturbance to the steep slopes, woodlands, and stream.

21

The Board argues[23] it properly found there were no unique physical circumstances or conditions peculiar to the Property that created an unnecessary hardship. The Board asserts that even though Merion Ridge would still need zoning relief to build one house, that does not give Merion Ridge carte blanche to develop the Property however it wants. In response to Merion Ridge's argument that the steep slopes justify variance relief, the Board asserts "[t]his argument ignores the provision of the [MPC] that a hardship cannot be based on what the ordinance imposes as a restriction." (Board's Br. at 15-16 (citing Section 910.2 of the MPC).) Stated another way, "pointing to the steep slopes as the reason for steep slope relief is exactly what the [MPC] proscribes." (*Id.* at 16.) Furthermore, the Board points out that Merion Ridge's Engineer testified that one can build in areas of steep slope with the use of retaining walls, which undercuts the unnecessary hardship requirement.

The Board also does not believe the unusual shape of the Property creates a hardship, pointing out that Merion Ridge can "fit what it wants to develop on the lot" notwithstanding the shape. (*Id.*) In the Board's view, the variance relief requested is unrelated to the shape of the Property.

According to the Board, the case relied upon by Merion Ridge, *Pohlig Builders*, is distinguishable in that there was less disturbance of the steep slopes and the steep slopes were ultimately being eliminated by the development in that case.

As for the request for relief from the cluster development provisions, the Board argues that, once again, it is the Zoning Ordinance, not the Property, causing the hardship because the Zoning Ordinance requires 15 acres for such developments, which is 3 times the size of the Property. In short, Merion Ridge "wishes to develop

---

[23] The Borough and Intervenor Virginia Lowe join in the Board's Brief.

22

in a cluster arrangement on a lot that simply does not qualify for cluster development," and do so without regard for other objective criteria, such as the requirement of public sewer. (Board's Br. at 19.)

The Board further asserts that because Merion Ridge "presented evidence that traditional lot layouts were possible on this Property for the same number of houses (or more), the Board reasonably determined that [Merion Ridge] is proposing a cluster arrangement as a result of the savings on infrastructure costs, and in order to maximize profit, rather than attempting to respect the steep slopes." (*Id.*) While Merion Ridge argues there is no evidence of record to this effect, the Board argues the "conclusion is justified by the lack of evidence from [Merion Ridge], wh[ich] has the burden of proof." (*Id.*)

In its reply brief, Merion Ridge disputes that the basis for its variance request related to cluster developments was because of the size of the Property. Rather, it maintains Landscape Architect testified that the purpose of clustering was to minimize steep slope disturbance. By clustering the houses closer to the access point, Merion Ridge contends a shorter drive would be necessary, thereby resulting in less disturbance to the steep slopes. Further, it argues that its proposed plan to cluster the houses is consistent with the purpose behind the Zoning Ordinance's clustering provision – "[t]o preserve sensitive natural features such as . . . steep slopes" and "[t]o provide greater design flexibility and a more efficient development pattern through shorter roads . . . ." (Merion Ridge's Reply Br. at 5 (quoting Section 113-182 of the Zoning Ordinance).)

2. Analysis

Section 910.2(a)(1) of the MPC sets forth the first criterion for variance relief:

23

> That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

53 P.S. § 10910.2(a)(1).

Here, there are numerous physical circumstances or conditions that Merion Ridge maintains are causing a hardship: the steep slopes themselves, the irregular lot shape, the stream bisecting the Property, and the extensive woodlands. The Borough responds that the steep slopes cannot form the basis of Merion Ridge's hardship argument because a hardship cannot be based on what the Zoning Ordinance imposes, and there is no evidence the other physical conditions are causing the alleged hardship.

The express terms of the MPC provide that we cannot consider circumstances or conditions caused by the applicable zoning ordinance. 53 P.S. § 10910.2(a)(1). That said, we routinely consider small lot sizes as a condition creating a hardship when we evaluate requests for variances from minimum lot size requirements. We did so just recently in *Riccio v. Newtown Township Zoning Hearing Board*, 308 A.3d 928 (Pa. Cmwlth. 2024). There, the ordinance called for a minimum lot size of 12,000 square feet, but the subject lot was only 8,865 square feet, so the property owner sought a dimensional variance to construct a single-family dwelling, which was granted. A neighboring property owner appealed, and the common pleas court affirmed. Upon further appeal, we affirmed, concluding the property owner satisfied its burden for a dimensional variance. In doing so, we held the lot size was a physical circumstance that could be considered. Specifically, we stated:

24

[T]he lot size of the [p]roperty is less than that required by the [o]rdinance, making compliance with the [o]rdinance impossible. The lot therefore constitutes a non-conforming lot. An undersized lot constitutes the physical circumstances which may entitle one to a variance provided the other variance criteria are met. *N. Pugliese, Inc. v. Palmer T*[*wp.*] *Zoning Hearing B*[*d.*], . . . 592 A.2d 118, 121 ([Pa. Cmwlth.] 1991); *Jacquelin v. Zoning Hearing B*[*d.*] *of Hatboro Borough*, . . . 558 A.2d 189 ([Pa. Cmwlth.] 1989). As we noted in *West Goshen* [*Township v. Crater*], "[w]here a lot is too small to conform with the minimum lot area requirements, and cannot be made to conform by merging lots or by re-subdividing a larger tract, enforcement of the ordinance would sterilize the land, creating the necessary hardship which will justify the granting of a variance." 538 A.2d [952,] 955 [(Pa. Cmwlth. 1988)].

*Riccio*, 308 A.3d at 942-43.

However, in a case involving a variance request from steep slope requirements, a zoning hearing board denied the requested relief, in part, on the same basis as Board did here, stating "[t]he physical conditions of [the a]pplicant's [p]roperty are not the reason for which the variance is sought; rather the physical conditions dictate application of [the steep slope zoning requirements] and it is from the application of those zoning requirements that [the a]pplicants seek their variance." *Boyer v. Zoning Hearing Bd. of Franklin Twp.*, 987 A.2d 219, 221 (Pa. Cmwlth. 2010) (quoting the zoning hearing board's conclusion of law). There, the applicants sought to build a single-family, detached dwelling on an 8½-acre plateau on a 42-acre mountaintop tract. The use was permitted in the zoning district, but the property was also located within a steep slope conservation overlay district, which prohibited substantial improvements on properties containing slopes exceeding 15%. After the common pleas court affirmed the denial, the applicants appealed to our Court, arguing, that the overlay requirements should not apply to the plateau portion of the property, that it was impossible to comply with the ordinance's

25

requirements, that the hardship was not self-created, and that they were unaware the property would be subject to the overlay requirements. *Id.* at 222. We affirmed the variance's denial, reasoning:

> Having considered [the a]pplicants' argument, we note that it is striking for what it does **not** purport; [the a]pplicants do not argue that the unnecessary hardship has not been caused by "the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located." Section 910.2(a)(1) of the MPC, 53 P.S. § 10910.2(a)(1). Presumably, [the a]pplicants fail to make this argument because they cannot legitimately do so where even they admit that they are unable to use the tract they own to erect a house because of the [s]teep [s]lope [o]verlay [r]egulation. . . . In other words, if it were not for the fact that the [p]roperty was within the [steep slope overlay district], there is no question that [the a]pplicants could erect their single-family residence on an eight-and-one-half-acre plateau in the [o]pen [s]pace [z]one. Given [the a]pplicants' failure to show that their unnecessary hardship arises from the unique physical circumstances of their property as opposed to the circumstances generally created by the [o]rdinance, an undoubtedly relevant criterion, we cannot agree with [the a]pplicants' assertion that the [zoning hearing board] abused its discretion or committed legal error in denying their variance request.

*Boyer*, 987 A.2d at 223 (internal quotation marks and citation omitted; emphasis in original). We are, therefore, bound by *Boyer*, which resolves this issue against Merion Ridge.

Merion Ridge, however, suggests steep slopes are a proper consideration based on prior decisions of this Court, which have granted steep slope relief, pointing to *Pohlig Builders* as an example. However, there, the unique physical characteristics of the property were a waterway dividing the property and a narrow strip of land connecting the two sides, which could not support a road that would comply with the applicable zoning ordinance. 25 A.3d at 1268-69, 1272. It does not appear that the steep slopes of the property were considered as one of the unique

26

physical characteristics of the property that caused a hardship. Merion Ridge also cites *Solebury Township v. Solebury Township Zoning Hearing Board*, 914 A.2d 972, 976 (Pa. Cmwlth. 2007). However, there the Court never reached the issue of whether there were unique physical circumstances or conditions on the property that created a hardship because the township had not preserved that issue for appellate review.

Merion Ridge also argues that the Borough has granted steep slope relief in the past. Borough's Engineer testified this is true, (R.R. at 195a), but that does not necessarily mean that the steep slopes of those properties were considered as part of the unique physical characteristics or conditions giving rise to the hardship. There is limited evidence of record as to the circumstances involving those properties.

Finally, we are not persuaded by Merion Ridge's argument that, under the Board's interpretation, an applicant would never be able to obtain variance relief from an ordinance provision prohibiting disturbances to physical conditions. As the applicant did in *Pohlig Builders*, an applicant could show that **other** unique physical conditions or circumstances of the property result in hardship.

In sum, although the courts have considered small lot sizes as a unique physical characteristic when it comes to variances from minimum lot sizes, this Court has expressly declined to consider steep slopes as a unique physical characteristic when the relief sought relates to those steep slopes. As this is consistent with the plain language of the MPC and this Court's precedent, we discern no error or abuse of discretion in the Board's refusal to consider the steep slopes of the Property as part of any hardship analysis.

Our inquiry does not end here though, as there was also evidence of other physical conditions that may properly be considered, namely the Property's irregular

shape, extensive woodlands, and a bisecting stream. Although there was evidence of these other physical conditions, we agree with the Board that Merion Ridge did not demonstrate how any of those conditions create a hardship. Notwithstanding those conditions, Merion Ridge still believed it could construct four single-family units on the Property. This illustrates it is the steep slopes that are the real hardship, which prevent development of the Property without a variance, but, as stated above, we cannot consider hardships that are the result of the Zoning Ordinance. For similar reasons, Merion Ridge has not established that a unique physical condition of the Property is resulting in a hardship entitling it to relief from the cluster development requirements. Thus, we affirm the Board's decision as it relates to the first criterion.

Because an applicant bears the burden of establishing **every** criterion for a variance, *Tidd*, 118 A.3d at 8, our analysis could end here. However, for completeness, we address Merion Ridge's other issues.

### C. *Whether the Board erred in concluding that one house on a 4.7-acre lot is a reasonable use when the Zoning Ordinance only requires 10,000 square feet*

#### 1. Parties' Arguments

Merion Ridge argues that under the Zoning Ordinance, and ordinary circumstances, it could build up to 20 single-family detached dwellings or up to 18 single-family detached dwellings in a cluster development; thus, building just one dwelling on a 4.7-acre lot, when the Zoning Ordinance only requires a 10,000-square-foot minimum lot size, is not reasonable. Merion Ridge asserts the adjacent development, Merion Hill, contains 92 dwellings, and is also on steep slopes within the R-1 District. To the extent the Board relied upon testimony that it would be physically possible to build one dwelling on the Property, Merion Ridge contends the Board did so in error because the correct inquiry was whether that use would be

reasonable, not just possible. (Merion Ridge's Br. at 30-34 (citing *RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216 (Pa. Cmwlth. 2024), and *Pohlig Builders*); *see also* Merion Ridge's Reply Br. at 7 (stating *RDM* rejected the "simply possible analysis").). Merion Ridge asserts there is no requirement that it provide a "detailed financial analysis" before it is entitled to variance relief. (Merion Ridge's Reply Br. at 9.)

The Board responds the record demonstrates the "Property can be reasonably developed in stricter conformity with" the Zoning Ordinance by building one house. (Board's Br. at 21.) The Board argues it credited Borough's Engineer over Merion Ridge's Engineer that construction of one house would create less disturbance of the steep slopes. Again, the Board argues Merion Ridge's plan is driven by the desire for greater profit margins. The Board asserts *RDM* is distinguishable because, there, the property was in an area surrounded by warehouses, which was the proposed use, and evidence was presented that the property was of limited value and marketability in the residential zoning district in which it was located. In contrast, here, the Board contends, the only evidence presented was a conclusory statement that the proposed plan was the "best means" of developing the Property. (*Id.* at 24.)

### 2. Analysis

Section 910.2(a)(2) of the MPC sets forth the second criteria for variance relief:

> That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

29

53 P.S. § 10910.2(a)(2).

Our Supreme Court has stated that to meet the second criterion, an applicant must "show that a denial of the requested variance would make the property practically **useless**." *Larsen*, 672 A.2d at 291-92 (emphasis added). This is not to say that an applicant must "show that the property at issue is **valueless** without the variance or that the property cannot be used for any permitted purpose." *Marshall v. City of Philadelphia*, 97 A.3d 323, 330 (Pa. 2014) (emphasis added). "Showing that the property at issue is 'valueless' unless the requested variance is granted 'is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request.'" *Id.* (quoting *Hertzberg*, 721 A.2d at 48). Rather, *Hertzberg* dictates that we look at, among other factors, "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Hertzberg*, 721 A.2d at 48, 50.

Further, "[t]he test for entitlement to a variance . . . is not whether the property use sought is the 'best' use for that property, but rather whether the property can reasonably be used in a manner consistent with the ordinance." *Appeal of Dinu*, 452 A.2d 95, 97 (Pa. Cmwlth. 1982). In *Yeager v. Zoning Hearing Board of the City of Allentown*, we stated:

> Ever since our Supreme Court decided *Hertzberg,* we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property **exactly as he wishes**, so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the **degree** of hardship

30

that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend **all** dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg,* bears emphasizing in the present case. . . .

As this [C]ourt recently noted:

> [W]hile *Hertzberg* eased the requirements . . . it did not make dimensional requirements . . . "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless—at best, rules of thumb—and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time.
>
> *Soc*[*'*]*y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 771 A.2d 874, 878 (Pa. Cmwlth. 2001).

*Yeager*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (emphasis in original). We recently restated these principles in *Slate Hills Enterprises, Inc. v. Zoning Hearing Board of Portland Borough*, 303 A.3d 846, 851 (Pa. Cmwlth. 2023).

In sum, "[m]ere economic hardship will not of itself justify a grant of a variance," and "[a] variance will not be granted because a zoning ordinance deprives the landowner of the most lucrative and profitable uses." *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069, 1070 (Pa. 2007).

The gist of Merion Ridge's argument on this issue is that, absent the steep slopes, Merion Ridge would be permitted to construct significantly more units than Merion Ridge proposed on the Property; therefore, Merion Ridge's application

31

seeking to construct four units was reasonable, and the Board's conclusion that one unit on a property much larger in size than the Zoning Ordinance requires for one unit is unreasonable per se. Implicit in this argument is that constructing four units instead of one unit is more profitable, which is confirmed by the testimony of Merion Ridge's witnesses. (*See, e.g.*, R.R. at 119a (Principal identifying one of the motivating factors for constructing more houses was "[m]oney"), 140a-41a (Landscape Architect identifying "financial" as one of the reasons building less units was undesirable); *see also id.* at 140a (Landscape Architect describing how one unit would have to be larger due to the "different kind of market").)

The "economic detriment to the applicant if the variance was denied" is certainly a consideration that the Supreme Court identified as appropriate. *See Hertzberg*, 721 A.2d at 50. Likewise, "the financial hardship created by any work necessary to bring the [property] into strict compliance with the zoning requirements" is a proper consideration. *Id.* The difficulty here is the dearth of such evidence to evaluate whether zoning relief is necessary. Aside from the general statements from the witnesses identified above, the only other financial evidence presented was Principal's testimony that he purchased the Property, and the tract in Township, for $375,000, which he considered a "good price." (R.R. at 110a, 112a.) Without such evidence, it is understandably difficult to evaluate whether one unit or some other number of units is reasonable.

Merion Ridge insists its motivation for the four-unit cluster development is minimization of the disturbance to the steep slopes, preservation of the woodlands, avoidance of the stream, and promotion of a "sense of community" and "esthetic[s]," as testified to by Landscape Architect. (*See id.* at 121a, 124a-25a, 129a-31a, 133a-34a, 142a.) Landscape Architect and Merion Ridge's Engineer also both testified as

32

to how fewer units and/or a traditional, non-clustered configuration resulted in greater disturbance to the steep slopes, than the proposed four-unit, clustered plan. (*See id.* at 133a-39a, 161a-64a, 166a-67a.) Importantly, though, the Board did not credit this evidence and, instead, credited the testimony of Borough's Engineer that less disturbance would occur if fewer units were constructed. (FOF ¶ 21 (D)-(E), (I).) It is beyond cavil that the zoning hearing board, as fact finder, is the sole judge of witness credibility and evidentiary weight, and we "may not substitute [our] interpretation of the evidence for that of the [zoning hearing board]." *Tidd*, 118 A.3d at 13. The Board's findings are entitled to deference and should not be disturbed on appeal so long as they are supported by substantial evidence. *RDM Grp.*, 311 A.3d at 1227. "It is irrelevant whether the record contains evidence to support findings other than those made by fact finder; the critical inquiry is whether there is evidence to support the findings actually made." *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 529 (Pa. Cmwlth. 2018). Here, based on the credited testimony of Borough's Engineer, there is substantial evidence to support the Board's findings.

The mere fact that more units would be permitted on the Property, but for the steep slopes, does not automatically entitle Merion Ridge to relief. To hold it does would eviscerate the Supreme Court's holding in *Hertzberg* that "multiple factors" are to be considered. 721 A.2d at 48, 50.

We are likewise not persuaded that the unreasonableness of the Board's decision is demonstrated by comparing Merion Ridge's proposed plan with the adjacent Merion Hill development. Again, while it is true that the Supreme Court said "the characteristics of the surrounding neighborhood" were an appropriate consideration in evaluating a variance request under the relaxed *Hertzberg* standard,

*id.*, there is minimal record evidence from which to draw such comparisons. Merion Ridge's Engineer did not know the amount of steep slopes on the Merion Hill development or what the Zoning Ordinance required at the time Merion Hill was constructed in the 1990s. (R.R. at 182a-83a.) Thus, as Borough's Engineer cautioned, it is not a "good idea" to compare properties without considering their unique characteristics. (*Id.* at 191a-92a.)

Finally, this Court's decision in *RDM Group* does not compel that we reverse the Board's decision. While *RDM Group* does state that applying a "simple 'possibility' standard" is not the law, and that, instead, the test is whether the landowner can make any reasonable use of the property, 311 A.3d at 1226, the facts of that case are distinguishable from the present one. There, the applicant sought use and dimensional variances to construct a warehouse on a nearly 18-acre triangular piece of land containing woodlands and a creek. *Id.* at 1220. Although the property was located in a residential zoning district, the nearest residence was 1,000 feet away, and the property was bordered by an industrial zoning district containing other warehouses. *Id.* At the hearing, the applicant presented numerous witnesses, including a real estate appraiser who testified as to the marketability and value of the property and a professional land use planner who testified it was "impractical" to develop the property as a residential use with industrial uses on two sides. *Id.* at 1221-22. The local zoning hearing board denied the application, concluding, in part, that there was a "possibility" to develop the property as a single-family residence. *Id.* at 1223. The applicant appealed to the county common pleas court, which affirmed. *Id.* Before this Court, the applicant argued, among other things, that the zoning hearing board erred or abused its discretion in denying the use variance. We agreed, pointing to the zoning hearing board's disregard of

34

precedent "recogniz[ing] that the character and use of surrounding properties can constitute unique circumstances justifying the issuance of a variance where they are sufficiently dissimilar to, and prohibitive of, the use of the subject property as zoned." *Id.* at 1226. We explained the property's location, coupled with the expert testimony that the property is of minimal value as a residence, was sufficient, as a matter of law to conclude that the hardship presented was peculiar to that property. *Id.* at 1227. There is little to no such evidence here apart from Landscape Architect's testimony that Merion Ridge thinks that the four-unit cluster development is "the best means of developing the [P]roperty." (R.R. at 130a-31a.)[24]

Moreover, in *RDM Group*, acknowledging that a zoning hearing board's findings are generally entitled to deference, we concluded the zoning hearing board's findings in that case were lacking in numerous regards. 311 A.3d at 1127. First, we noted that "nowhere did the [zoning hearing board] make any specific findings regarding any unique characteristics of the [p]roperty or any hardship that the surrounding uses impose on the [p]roperty." *Id.* at 1228. Second, we stated the zoning hearing board's decision lacked any determinations as to weight of the evidence or credibility to support its conclusions, which was "particularly significant given the fact that the testimony of all of [the applicant's] expert and fact witnesses was virtually uncontradicted and, in certain respects, corroborated by the [t]ownship's own engineer." *Id.* We further explained that "[t]o the extent [] the [zoning hearing board] implicitly made credibility and evidentiary weight determinations without acknowledging or evaluating the testimony of [the

---

[24] This testimony, under our precedent, would still be insufficient. *See Appeal of Dinu*, 452 A.2d at 97 ("The test for entitlement to a variance . . . is not whether the property use sought is the 'best' use for that property, but rather whether the property can reasonably be used in a manner consistent with the ordinance.").

applicant's] witnesses in its written opinion, those determinations were arbitrary and capricious and are disregarded." *Id.* In contrast, here, as discussed above, the Board did make detailed findings, albeit on remand, weighing the evidence and crediting Borough's Engineer over Merion Ridge's witnesses.

In summary, we discern no error or abuse of discretion in the Board's decision as it relates to the second criterion for variance relief.

### D. *Whether the Board erred in concluding the hardship was self-created*

#### 1. Parties' Arguments

Merion Ridge argues the Board erred in concluding it created its own hardship by seeking to "overdevelop" the Property. Rather, Merion Ridge points to the unique existing conditions, such as the unique shape caused by PennDOT's taking or the Property's naturally occurring physical conditions.

The Board argues any hardship here is self-created by Merion Ridge, which proposed a plan on a property that does not otherwise qualify for it. To the extent Merion Ridge points to the adjacent development, the Board points out that Merion Hill is located on a lot exceeding the 15-acre minimum lot size for cluster developments.

#### 2. Analysis

Section 910.2(a)(3) of the MPC sets forth the third criterion for variance relief: "That such unnecessary hardship has not been created by the appellant." 53 P.S. § 10910.2(a)(3). The courts have recognized that a self-created hardship can occur "where the purchase price was too dear" or the "transfer of the property" created the hardship. *Wilson*, 936 A.2d at 1069 (citation omitted). Another example of a self-created hardship is where a lot is subdivided in a sale, resulting in physical features

in the subdivided lots that are at issue. *Id.* at 1069 n.12. Self-created hardships can also be created through neglect of the property owner. *Id.* "[P]re-purchase knowledge of zoning restrictions limiting development, without more, does not create a hardship." *Id.* (citation omitted). Similarly, "[s]elf-inflicted economic hardship is not justification for a grant of a variance." *Id.* at 1269 (citation omitted).

Given the Board's determination that no hardship was created by the Property's physical conditions, which, for the reasons set forth above, we conclude was not in error, it is unnecessary to reach this issue because, obviously, if there is no hardship, it cannot be self-created. However, to the extent there was any hardship, based upon the Board's findings as to the motivation behind the proposed development, that hardship would necessarily have been self-created. *See Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 475 (Pa. Cmwlth. 2021) ("Where variances are sought solely to enhance profitability, the asserted hardship arises not from the nature and circumstances of the property itself but is self-inflicted by way of the variance applicant's preferred or proposed use of the property.").

Merion Ridge again points to *RDM Group* for support, but, as explained above, *RDM Group* is factually distinguishable. Here, unlike there, the Board did not "summarily conclude" the hardship was self-imposed but determined it was due to the nature of Merion Ridge's proposed plan, the faults of which the Board described in detail throughout its decision. Thus, this issue is not a basis for reversal of the Board's decision.

37

*E. Whether substantial evidence exists to support the Board's findings that the variances would alter the essential character of the neighborhood or zoning district, would substantially or permanently impair the appropriate use or development of adjacent property, or would be detrimental to public welfare*

1. Parties' Arguments

Merion Ridge argues the Board erred in determining the requested variances would alter the essential character of the neighborhood, substantially impair the appropriate use of the adjacent property, and be detrimental to public welfare. Merion Ridge challenges Finding of Fact 23, which relates to protecting adjacent properties and risks associated with development of steep slopes, as being irrelevant to the variance request and, even if relevant, lacking support of substantial evidence. It asserts Merion Ridge's Engineer testified the plan would not alter the essential character of the neighborhood or district, would not substantially impair the use and development of adjacent property, and would not be detrimental to public health, safety, and welfare. It argues this testimony established the Property could be safely developed, similar to other properties with steep slopes. Similarly, Merion Ridge argues there was testimony why the low-density cluster development was appropriate here. According to Merion Ridge, the only adverse testimony was by Borough's Engineer, which was "general" and "conclusory," not specific to this plan. (Merion Ridge's Br. at 39.)

The Board argues Merion Ridge did not meet its burden of showing the variance would not alter the essential character of the neighborhood, substantially impair the appropriate use of adjacent property, or be detrimental to public welfare. It argues the credited testimony of the Borough's Engineer supports the Board's findings.

2.    Analysis

Section 910.2(a)(4) of the MPC sets forth the fourth criterion for variance relief:

> That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

53 P.S. § 10910.2(a)(4).

Merion Ridge asserts it established, through the testimony of Merion Ridge's Engineer that this criterion was met. He testified that "with proper engineering and geotechnical studies[, the Property] can be developed in a safe manner," pointing generally to "many parts" of the Borough that have been developed on steep slopes. (R.R. at 155a.) However, Borough's Engineer offered competing testimony describing some of the issues that arose with those developments. (*Id.* at 191a-92a.) Merion Ridge's Engineer also explained how, in his opinion, the plan did not alter the essential character of the neighborhood because, but for the Property's physical characteristics, more than five times as many homes could have been constructed on the Property. (*Id.* at 157a-58a.) However, this relates to the Property itself and does not shed any light on the essential character of the neighborhood. There was some evidence related to Merion Hill, but those details were limited, (*id.* at 158a-60a, 182a-83a), and it was also, at best, evidence of one development, not necessarily the essential character of the neighborhood. In terms of the zoning relief from the public sewer requirement, there was no evidence presented as to why that requirement imposed a hardship, particularly when public sewer was available. Similar to some of the other criteria, in order to reverse the Board on this issue, we would have to disturb the Board's factual findings, reweigh the evidence, and make different

39

credibility determinations, which we cannot do. *Tidd*, 118 A.3d at 13. We reiterate that "[i]t is irrelevant whether the record contains evidence to support findings other than those made by fact finder; the critical inquiry is whether there is evidence to support the findings actually made." *Liberties Lofts*, 182 A.3d at 529.

To the extent Merion Ridge contends the Borough Engineer's testimony was "general" and "conclusory," (Merion Ridge's Br. at 39), we disagree. Borough's Engineer testified about the numerous risks associated with disturbances of steep slopes, including "lack of stabilization and vegetation," the resultant runoff, and the risk of landslides. (R.R. at 189a.) He also described safety concerns with retaining walls, as well as providing adequate access for emergency personnel. (*Id.* at 190a-91a.) He did not think comparing this Property to other properties where development was permitted on steep slopes was a "good idea" because it did not take into account the properties' unique characteristics. (*Id.* at 191a-92a.)

As we must view the evidence presented in the light most favorable to the party that prevailed before the fact finder, including by giving that party the benefit of all reasonable inferences arising therefrom, *Tidd*, 118 A.3d at 13, we conclude that based upon our review of the record and the Board's credibility determinations, there was substantial evidence to support the Board's findings.

*F. Whether the Board erred in concluding that one single-family dwelling on the Property would represent the minimum variance required to afford Merion Ridge relief and represented the least modification required*

1. Parties' Arguments

Merion Ridge argues the Board's finding that it did not seek the minimum variance required suffers from the same defect as the Board's findings related to reasonable use: it wrongly focused on the possibility of building just one dwelling, which is a "draconian approach." (Merion Ridge's Br. at 40.) Merion Ridge argues

40

it presented extensive evidence of how the plan was revised more than once to minimize disturbance to the Property's steep slopes. Moreover, Merion Ridge argues variance relief is necessary just to access the Property.

The Board argues the record establishes that the requested variances are not the minimum required to afford relief as the evidence shows it is possible to construct one house and there is no evidence that one house is not a reasonable use of the Property. It asserts Merion Ridge's argument that constructing one house would result in more steep slope disturbance than building four houses was not persuasive.[25] In addition, with regard to the variance for the cluster development, the Board argues Merion Ridge presented no evidence that on-lot sewer systems were feasible on the Property or that public sewer was not required, especially in light of the Borough Engineer's testimony that public sewer was available.

### 2. Analysis

Section 910.2(a)(5) of the MPC sets forth the fifth criterion for variance relief: "That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue." 53 P.S. § 10910.2(a)(5).

Our analysis of this issue is largely controlled by our analysis of the second issue related to whether one unit would be a reasonable use; thus, we need not repeat it here. However, to the extent Merion Ridge argues variance relief is required notwithstanding whether it builds one unit or four units, we addressed a similar

---

[25] In its reply brief, Merion Ridge disputes this characterization as being a capricious disregard of the evidence, which shows both of Merion Ridge's experts testified any disturbance would be caused by providing access not constructing the houses, and a mischaracterization of the testimony.

41

argument in *Prime Development Group, LP v. Upper Makefield Township Zoning Hearing Board* (Pa. Cmwlth., No. 1281 C.D. 2020, filed December 23, 2021).[26] There, we stated that because the entire property was on hydraulic soils, a variance would be required for **any** construction. *Id.*, slip op. at 9. We explained:

> The critical element [] is the **degree** of modification required to retain a minimal effect on the hydraulic soils, steep slopes, and mature trees. The fifth criterion requires the "**least** modification to the regulation at issue." Section 910.2(a)(5) of the MPC, 53 P.S. § 10910.2(a)(5). Notwithstanding that a smaller home would have less impact on the natural features sought to be protected in the [zoning d]istrict, [the d]eveloper admitted that there was no attempt to redesign the house to reduce the footprint or square footage.

*Id.* (emphasis in original).

Here, it is likewise the **degree** of the requested variance with which the Board took issue, finding one unit is the least modification required to still enable Merion Ridge to enjoy reasonable use of the Property. Merion Ridge argues the proposed plan provides the least disturbance to the steep slopes, but as discussed above, that evidence was not credited by the Board.

For all of these reasons, we discern no error in the Board's decision as it relates to this criterion.

> *G.  Whether the Board erred in its findings related to the criteria set forth in the Zoning Ordinance*

> 1.  Parties' Arguments

Merion Ridge asserts numerous alleged errors by the Board as to its application of the criteria set forth in the Zoning Ordinance for variance relief. It

---

[26] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

argues the Board found the plan was inconsistent with the spirit, purpose, and intent of the Zoning Ordinance because the Property is not large enough for a cluster development, but, in doing so, it ignores this is the variance relief Merion Ridge is requesting. According to Merion Ridge, "[u]nder the Board's finding, no request for a variance could be found to be consistent with the spirit, purpose, and intent of" the Zoning Ordinance. To the extent the Board found the development is not in the Borough's best interest or not developed in accordance with sound standards for subdivision and land development practice, Merion Ridge argues these are subjective provisions that lack a standard from which to judge compliance. It also argues the Board's findings related to burdening public services and facilities is based on the Borough Engineer's conclusory and general testimony.

The Board argues Merion Ridge failed to present evidence to satisfy all of the requirements for variance relief, and the Court, upon review, must defer to the Board's factual findings.

### 2. Analysis

Section 113-120 of the Zoning Ordinance sets forth an exhaustive list of items the Board is required to consider in determining whether variance relief is warranted:

A. Consider the suitability of the property for the use desired and determine whether the proposed change is consistent with the spirit, purpose and intent of this chapter and Comprehensive Plan.

B. Determine that the proposed change will not substantially injure or detract from the use of the neighboring properties or from the character of the neighborhood and that the use of the adjacent properties are adequately safeguarded.

C. Determine that the proposed change will serve the best interest of the Borough. . . .

43

D. Consider the effect of the proposed change upon the logical, efficient and economical extension of public services and facilities such as public water, sewers, police, fire protection and public schools.

E. Consider the suitability of the proposed location of use with respect to probable effects upon highway traffic and assure adequate access arrangements in order to protect major roads from undue congestion and hazard.

F. Be guided by its study, review and recommendation by sound standards of subdivision and land development practice where applicable.

G. Imposing such conditions and safeguards in addition to those required which are necessary to assure compliance with the intent of this chapter and the Comprehensive Plan. Such conditions may include, but are not limited to, harmonious design of buildings, planting and its maintenance as a sight or sound screen, the minimizing of noxious, offensive or hazardous elements and adequate standards of parking, loading and sanitation.

H. In all applications for variances and special exceptions, the Board shall examine the effect of the proposed use or expansion of an existing use on the demands for parking in the Borough. The . . . Board shall evaluate the necessity of providing off-street parking regardless of whether off-street parking is required by the [Zoning Ordinance]. The . . . Board shall require the applicants to present testimony regarding the effect of the proposed use on parking problems in the Borough.

   . . . .

K. In a variance case, the applicant shall have the burden of establishing by competent evidence and testimony the criteria required by the [MPC] for the granting of a variance and that the literal enforcement of the provisions of this chapter will result in unnecessary hardship as that term is defined by relevant statutory provisions and current case law. The applicant seeking a variance will also have the burden of establishing that the allowance of a variance will not be contrary to the public interest.

L. In considering whether the allowance of a special exception or variance is contrary to the public interest, the . . . Board shall consider whether the application, if granted, will:

    (1)    Substantially increase traffic congestion in the streets surrounding the subject site.

    (2)    Increase the risk of fire or panic or otherwise endanger the public safety.

    (3)    Overcrowd the land or create undue concentration to population.

    (4)    Be suitable for the property in question so as to be consistent with the spirit and purpose of the provisions of this chapter.

    (5)    Intrude upon the adequacy of natural light and air to adjoining properties.

    (6)    Create extraordinary burdens on public, private or community water systems or upon groundwaters or wells within the neighborhood.

    (7)    Overburden the public sanitary sewer system or present other environmental problems for the area.

    (8)    Place undue burdens on the police, fire, ambulance or other emergency services provided throughout the neighborhood.

    (9)    Cause adverse effects to the appropriate use to the adjacent properties in the neighborhood where the property is located.

    (10)    Cause adverse impacts due to its building, parking areas, loading areas, outdoor activity areas, light sources, trash areas, storage areas and other potential nuisances to abutting properties and the neighborhood as a whole.

    (11)    Cause risk or damage to the safety of persons or property by improper location or design of facilities for ingress and egress to or from the property in question.

(12) Cause negative impacts to any rivers, streams, ponds, floodplains, wetlands, parklands, groundwater, vegetation, steep slopes, air and ground.

(13) Overburden the street parking in the area.

(14) Otherwise adversely [a]ffect the public safety, health, morals and general public welfare of the community.

(Zoning Ordinance § 113-120.)[27]

The above criteria largely track or fall within the criteria set forth in the MPC. Since the MPC criteria have already been addressed by this Court, and we discern no error or abuse of discretion in the Board's decision related to those criteria, we likewise find no error or abuse of discretion as it relates to the criteria set forth in the Zoning Ordinance.[28]

## III. CONCLUSION

Based on the foregoing, we discern no error or abuse of discretion by the Board in evaluating Merion Ridge's application for variances from the Zoning Ordinance's steep slope and cluster development provisions. Accordingly, we affirm common pleas' Order, which affirmed the Board's decision denying Merion Ridge's variance application.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[27] The section also appears to set forth standards for special exceptions. The omitted paragraphs pertain only to special exceptions.

[28] The Board found in favor of Merion Ridge on a number of the criteria, such as the plan would not negatively impact some public services, harmfully affect traffic, or impact parking demand. (Remand FOF ¶ 25(D)-(E), (H).)

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:  Appeal of Merion Ridge, LLC    :
from the Decision dated                 :
March 31, 2022, of the Zoning           :
Hearing Board of West                   :
Conshohocken                            :
                                        :  No.  1567 C.D. 2023
Appeal of:  Merion Ridge, LLC           :

# **O R D E R**

NOW, December 9, 2024, the Order of the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge